[Civ. No. 35164. First Dist., Div. Two. Oct. 20, 1975.]

BERNICE MIDDELSTEADT, Plaintiff and Appellant, v.
ROBERT W. KARPE, as Real Estate Commissioner, etc.,
Defendant and Appellant.

Paul G. Dobbins for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Mervin R. Samuel, Deputy Attorney General, for Defendant and Appellant.

**OPINION**

**KANE, J.**—Defendant Robert W. Karpe, Real Estate Commissioner of the State of California ("appellant") appeals from the trial court's judgment ordering the payment of funds to respondent out of the Real Estate Education, Research and Recovery Fund ("Recovery Fund"); respondent Bernice Middelsteadt cross-appeals from that portion of the judgment disallowing interest on the sum awarded.

The undisputed facts reveal that in July 1967 respondent, a licensed real estate broker, engaged the services of Mary Ann Lowell ("Mary"), a

licensed real estate saleswoman. The oral agreement entered between them provided for a 50-50 division of commissions earned by Mary. On or about November 16, 1967, while in the employ of respondent, Mary, together with Ernest R. Smith ("Smith"), a licensed real estate broker, negotiated and consummated an exchange of an apartment house owned by one Pasquet for two parcels of unimproved real property owned by Dalton and Ima Ford ("Fords"). For negotiating the aforesaid transaction Mary received $12,750 commission from Fords and $10,000 from Pasquet. It is uncontradicted that Mary obtained the commissions without the knowledge, consent or authorization of respondent; and that although not holding herself out as a broker, she failed to reveal to the parties that she was employed by respondent as a saleswoman. The commissions in dispute were paid through Western Title Insurance Company, the escrow holder for the parties.

Based upon the foregoing facts, on November 14, 1968, an accusation was filed against Mary for violation of Business and Professions Code,[1] sections 10137,[2] and 10177, subdivisions (f) and (j).[3] After a hearing and receiving evidence, the commissioner found Mary guilty as charged and, by a decision dated March 4, 1969, temporarily revoked her real estate license.

Thereafter, respondent filed suit against Mary, Smith, Pasquet, Fords and Western Title Insurance Company. The first amended complaint, filed on August 8, 1969, charged inter alia that Mary concealed from the other parties her employment with respondent, entered into negotiations with defendants for the exchange of certain real property without respondent's consent or knowledge, and in violation of the oral

---

[1]Unless otherwise indicated, all references will be made to the California Business and Professions Code.

[2]Section 10137 reads in part that "*No real estate salesman shall* be employed by or *accept compensation from any person other than the broker under whom he is* at the time *licensed.*

"It is unlawful for any licensed real estate salesman to pay any compensation for performing any of the acts within the scope of this chapter to any real estate licensee except through the broker under whom he is at the time licensed.

"*For a violation of* any of the provisions of *this section, the commissioner may temporarily suspend* or permanently revoke *the license of the real estate licensee,* in accordance with the provisions of this part relating to hearings." (Italics added.)

[3]Section 10177 provides in part "*The commissioner may suspend or revoke the license of any real estate licensee,* or may deny the issuance of a license to an applicant, *who has done any of the following:* . . .

"(f) Acted or conducted himself in a manner which would have warranted the denial of his application for a real estate license. . . .

"(j) *Any other conduct,* whether of the same or a different character than specified in this section, *which constitutes fraud or dishonest dealing.*" (Italics added.)

agreement with respondent accepted commissions from defendants in her own name (first cause of action). In the second and third causes of action respondent leveled charges against defendant Western Title Insurance Company for breach of fiduciary duty and for professional negligence in handling the escrow of the parties.

The case came up for trial on September 28, 1972. Counsel for Mary moved the court to withdraw from the case on account of his client's disappearance. The court granted the motion and entered a default judgment obligating Mary to pay $17,800.94 principal, $6,168.20 interest, and costs.

Due to Mary's disappearance with the absconded funds, the judgment rendered against her remained unsatisfied. Thereupon, in reliance on sections 10471 and 10472 respondent filed an application in the lower court for an order directing appellant to pay the amount of the underlying judgment out of the Recovery Fund. After a trial, the lower court found that the final judgment against Mary was founded on fraud and deceit directly arising out of a real estate transaction for which a real estate license was required and that the aggrieved person contained in section 10471 included a real estate broker who had been defrauded by his real estate agent. The trial court likewise concluded that respondent fully complied with the provisions of section 10472 as well, and accordingly obligated appellant to satisfy respondent's actual loss totaling $8,875 out of the Recovery Fund. At the same time the trial court held that the "actual and direct loss" provided by section 10471 does not include legal interest on the judgment and costs of the suit. The present appeal and cross-appeal followed.

Although appellant also assails the judgment on procedural grounds, his main contention on appeal is that a reversal of the judgment is imperative because several provisions of section 10471[4] and

---

[4]Section 10471 provides that "When *any aggrieved person* obtains a final judgment in any court of competent jurisdiction against any person or persons licensed under this part, *under grounds of fraud, misrepresentation, deceit, or conversion of trust funds* arising directly out of any transaction when the judgment debtor was licensed and performed acts for which a license is required under this part, and which cause of action occurred on or after July 1, 1964, the aggrieved person may, upon the judgment becoming final, file a verified application in the court in which the judgment was entered for an order directing payment out of the Real Estate Education, Research and Recovery Fund of the amount of actual and direct loss in such transaction up to the sum of ten thousand dollars ($10,000) of the amount unpaid upon the judgment, provided that nothing shall be construed to obligate the fund for more than ten thousand dollars ($10,000) per

10472[5] were not met. Thus, it is contended that the statutory phrase "any aggrieved person" should be interpreted in light of the purpose of the real estate law to protect the public from dishonest real estate licensees and that this interpretation would exclude a claim by one licensee against another. Moreover, it is argued that the judgment against Mary was not obtained upon grounds of fraud, misrepresentation, deceit or conversion of trust funds as required by section 10471, and that the emphasized provisions of section 10472 were not complied with by respondent. For the reasons which follow, we agree with appellant and therefore reverse the judgment.

■ Turning to appellant's first contention, it is to be noted that one of the main requisites of seeking redress from the Recovery Fund is that the judgment creditor whose judgment has remained unsatisfied be an aggrieved person within the meaning of section 10471. The issue of who

transaction regardless of the number of persons aggrieved or parcels of real estate involved in such transaction.

"A copy of the verified application shall be served upon the commissioner and the judgment debtor and a certificate or affidavit of such service filed with the court." (Italics added.)

[5]Section 10472 sets forth that "The court shall conduct a hearing upon such application 30 days after service of the application upon the Real Estate Commissioner. Upon petition of the Real Estate Commissioner, the court shall continue the hearing up to 60 days further; and upon a showing of good cause may continue the hearing for such further period as the court deems appropriate. *At the hearing the aggrieved person shall be required to show:*

"(a) He is not a spouse of debtor, or the personal representative of such spouse.

"(b) *He has complied with all the requirements of this article.*

"(c) He has obtained a judgment as set out in Section 10471, stating the amount thereof and the amount owing thereon at the date of the application.

"(d) He has obtained issuance of an order pursuant to Section 714 of the Code of Civil Procedure and examined the judgment debtor under oath concerning his property.

"(e) *He has made all reasonable searches and inquiries to ascertain whether the judgment debtor is possessed of real or personal property or other assets, liable to be sold or applied in satisfaction of the judgment.*

"(f) *That by such search he has discovered no personal or real property or other assets liable to be sold or applied, or that he has discovered certain of them, describing them, owned by the judgment debtor and liable to be so applied, and that he has taken all necessary action and proceedings for the realization thereof, and that the amount thereby realized was insufficient to satisfy the judgment, stating the amount so realized and the balance remaining due on the judgment after application of the amount realized.*

"(g) *That he has diligently pursued his remedies against all the judgment debtors and all other persons liable to him in the transaction for which he seeks recovery from the Real Estate Education, Research and Recovery Fund.*

"(h) That he is making said application no more than one year after the judgment becomes final.

"(i) That he has posted a bond to guarantee court costs, including reasonable attorney's fees, should his application be denied, in the amount of 10 percent of the recovery he seeks from the Real Estate Education, Research and Recovery Fund at least 20 days before the hearing upon his application." (Italics added.)

is qualified as an aggrieved person under the statute is one of first impression which has not been explained either by the Legislature or by any case authority. As a consequence, in defining the statutory meaning of "aggrieved person" we must look to the general purpose of the real estate law and case authorities which have dealt with analogous problems.

While the code section is couched in broad terms which seemingly embrace any person inside and outside the real estate profession, the language used therein is far from being explicit. Under these circumstances the meaning of the statutory phrase must be resolved with reference to the Real Estate Brokers' Act, of which section 10471 is but a part (cf. *Schantz* v. *Ellsworth* (1971) 19 Cal.App.3d 289, 292 [96 Cal.Rptr. 783]). The cases, in turn, are legion both in California and elsewhere which hold that the primary purpose of the real estate act is to raise the standards of the real estate profession by requiring its members to deal fairly and ethically *with their clients. (California Emp. Stab. Com.* v. *Morris* (1946) 28 Cal.2d 812, 817 [172 P.2d 497]; *Circle Oaks Sales Co.* v. *Smith* (1971) 16 Cal.App.3d 682, 685 [94 Cal.Rptr. 232]; *De St. Germain* v. *Watson* (1950) 95 Cal.App.2d 862, 867 [214 P.2d 99]; *Koeberle* v. *Hotchkiss* (1935) 8 Cal.App.2d 634, 640 [48 P.2d 104]; *Houston* v. *Williams* (1921) 53 Cal.App. 267, 271 [200 P. 55]; 10 Cal.Jur.3d, § 8, p. 484; see also: *Cannon* v. *Florida Real Estate Commission* (Fla.App. 1969) 221 So.2d 240, 241; *Phoenix Assurance Company of New York* v. *Young* (1961) 104 Ga.App. 55 [121 S.E.2d 70, 71]; *Eberman* v. *Massachusetts Bonding & Ins. Co.* (D.C.Mun.App. 1945) 41 A.2d 844, 845). Or to put it another way, the protected class under the act is not the real estate licensees but the clients (*Iusi* v. *Chase* (1959) 169 Cal.App.2d 83, 87 [337 P.2d 79]; *Ferguson* v. *Schuenemann* (1959) 167 Cal.App.2d 413 [334 P.2d 668]; *Cannon* v. *Florida Real Estate Commission, supra*).

As pointed out earlier, the instant case grew out of an internal dispute between a broker and saleswoman over the division of commissions earned by the saleswoman and did not involve fraud or deceit worked upon the clients. It follows, therefore, that in light of the stated policy underlying the real estate act, the broad provision of section 10471 must be read to the effect that the aggrieved person who is entitled to compensation from the Recovery Fund must be a client or a member of the general public. Conversely, the Recovery Fund, which provides a limited amount for the protection of the public, may not be resorted to by the real estate licensees themselves who are in a better position to guard against the deceitful and fraudulent acts of their colleagues and who therefore fall outside the class protected by the statute.

We are confirmed in our view by cases addressing and deciding similar issues in analogous situations. Thus, in *Gilewicz* v. *Home Indemnity Company* (D.C.Mun.App. 1959) 150 A.2d 627, plaintiff, a licensed real estate saleswoman, was employed by one Wright, a licensed real estate broker. Under the terms of the employment agreement Gilewicz was entitled to a commission on all sales consummated by her on the broker's behalf. As a result of her efforts, Gilewicz effected a sale of real estate and thereby earned a commission. However, in violation of the agreement of employment the broker paid only a portion of the commission due. By statute, a real estate broker in the District of Columbia was required to post a surety bond with his application for a license.[6] Gilewicz, therefore, brought an action against the surety to recover the balance of the commission. Similar to the case at bench, the issue before the court was whether the statutory phrase "any aggrieved person" covered a real estate licensee. Holding that it did not, the court pointed out that: " 'The purpose and design of the [Real Estate License] Act primarily are, as stated in its title, "to protect the public against fraud in real-estate transactions." [Citations omitted.] The protection of the public interest is the basis for the exercise of the police power in the enactment of such a law. [Citations omitted.] The bond required by the Act is, therefore, for the protection of the public, and the question here presented is whether a real estate salesman is within the general public intended to be protected by the Act and the bond given pursuant to it. The provisions of the Act must be construed in the light of the purpose of the Act and the evils it was designed to protect against. *When the legislature enacts a statute regulating a business for the purpose of protecting the public against existing or potential evils in that business, those engaged in the business are not generally regarded as a part of that public. The public is protected against them and not they against their fellow businessmen.'* " (Italics partially added. See to the same effect: *Eberman* v. *Massachusetts Bonding & Ins. Co., supra; Collier* v. *Hartford Acc. & Indem. Co.* (D.C.Mun.App. 1962) 180 A.2d 846; *Phoenix Assurance Company of New York* v. *Young, supra.)*

---

[6]District of Columbia Code (1951) section 45-1405, provided in part that "Every application for a license shall be accompanied by a bond in the sum of $2,500 in the case of a broker . . . running to the District of Columbia executed by a surety company duly authorized to do business in the District of Columbia . . . . Said bond shall be in form approved by the [Real Estate] Commission, and conditioned that the applicant shall conduct himself and his business in accordance with the requirements of this chapter; and for his failure so to do *any person aggrieved* thereby shall have, in addition to his right of action against the principal thereof, a right to bring suit against the surety on said bond . . ." (italics added).

The applicability of the aforecited cases to the case at bench is quite obvious. It requires no strenuous effort to see that the statutory bond, which affords a limited amount of recovery from an independent source in case the real estate licensee commits some wrongdoing and defaults, serves the very same purpose as the Recovery Fund in California, and as a consequence the policy reasons set out with regard to the surety bond apply with equal force to the nature of, and a satisfaction from, the Recovery Fund.

Although the conclusion reached above is in itself determinative of the outcome of the present appeal, we parenthetically note that the judgment is subject to reversal for the additional reason that respondent failed to comply with several provisions of section 10472.

Thus, the record before us demonstrates that while counsel for respondent filed a declaration with the trial court stating that Mary's address and whereabouts were unknown and he was unable to execute the judgment on any properties of Mary because they were not known to the declarant, there is a total failure to show that respondent made all reasonable searches and inquiries to ascertain Mary's property assets and that such diligent search failed to lead to the discovery of any personal or real property of the judgment debtor (§ 10472, subds. (e) and (f)). More significantly, however, the record is entirely devoid of any indication that respondent has diligently pursued his remedies against the other defendants who had been named along with Mary in the original action (§ 10472, subd. (g)). This proposition is especially applicable to Western Title Insurance Company, against which valid causes of action were stated for breach of fiduciary duty and professional negligence in handling the escrow. It goes without saying that these allegations, if pursued to successful conclusion, would have yielded a recovery of damages against the title insurance company defendant.

In view of our resolution of the case, the additional issues raised on appeal and cross-appeal need not be decided.

The judgment is reversed. The cross-appeal is dismissed.

Taylor, P. J., and Rouse, J., concurred.