[Civ. No. 21250. Fourth Dist., Div. Two. Feb. 20, 1980.]

FRANK BUCCELLA, Plaintiff and Respondent, v.
EUGENE MAYO, Defendant and Appellant;
DAVID H. FOX, as Real Estate Commissioner, etc., Real Party in
Interest and Appellant.

COUNSEL

Dougherty, Elekes & Carroll and Patrick C. Carroll for Defendant and Appellant.

George Deukmejian, Attorney General, and Raymond B. Jue, Deputy Attorney General, for Real Party in Interest and Appellant.

Bruce R. Fink for Plaintiff and Respondent.

OPINION

KAUFMAN, J.—Plaintiff, Franklin Buccella, obtained an order directing payment of $6,946.28 from the Real Estate Education Research and Recovery Fund[1] (hereinafter Fund) on account of an unsatisfied default judgment against defendant, Eugene Mayo. Both defendant[2] and Fund appeal from the order. We conclude the order must be reversed because the record discloses that no evidence was presented to the trial court establishing that the conduct of defendant complained of by plaintiff constituted or involved acts for which a real estate license is required.

Plaintiff's original complaint for "breach of contract; fraudulent representation; detrimental reliance; action to enforce a trust and punitive damages" was filed May 22, 1974. Named as defendants were Eugene Mayo (herein designated defendant), his wife Caroline Mayo, Allen R. Snapp, his wife LaTrisia Snapp, and Mariner Savings and Loan Association, Inc. On September 16, 1974, a first amended complaint was filed naming the same parties defendant and seeking the same relief as the original complaint. Defendant was personally served with the summons and both the complaint and first amended complaint. He failed to respond, and on October 29, 1974, his default was entered.

The first amended complaint contained three counts which in substance contained allegations to the effect that plaintiff was defrauded by the various defendants. In view of the basis for our decision it is nec-

---

[1]The Real Estate Education Research and Recovery Fund as such was abolished as of January 1, 1977, and the monies therein were transferred to a separate account in the Real Estate Fund which basically serves the same purpose. (Stats. 1976, ch. 271, § 2, p. 565; Bus. & Prof. Code, § 10450.6.)

[2]Defendant is aggrieved by the order because it will result in the automatic suspension of his real estate license. (See Bus. & Prof. Code, § 10475.)

essary to set forth rather specifically the substance of the allegations insofar as they pertain to defendant.

In the first count it was alleged that defendant was at all pertinent times a licensed real estate salesman; that on December 5, 1972, defendant and his wife executed and delivered to plaintiff a promissory note in the amount of $3,200 and a deed of trust to secure the note describing certain real property in which defendant and his wife resided; that to induce plaintiff to make the loan which was the consideration for the promissory note and deed of trust defendant made a number of misrepresentations to plaintiff including misrepresentations that he owned the real property described in the deed of trust and that he needed the loan only for a short time pending his sale of another property at a substantial profit, the proceeds of which would be used to repay plaintiff's loan; and that in truth and fact defendant and his wife had on April 11, 1972, conveyed all of their interest in the title to the described property to another party and the deed of trust delivered to plaintiff was valueless.

The allegations in the second count were very similar to those in the first. It was alleged that on November 27, 1972, defendant executed and delivered to William H. Willming and Mary Ann Willming a promissory note in the amount of $2,600 and a second deed of trust to secure the note; that Mr. and Mrs. Willming were the agents of defendant and that contemporaneously the note and deed of trust were assigned to plaintiff by the Willmings; that the money paid by plaintiff went not to the Willmings but to Mariner Savings and Loan Association who received the money as agent for and on behalf of defendant; that to induce plaintiff to enter into this transaction defendant made certain misrepresentations including that the "real property securing this loan has a great deal of equity and it is a very safe investment" and that "the loan was only needed for a very short time and that [defendant] was selling some other property and would be paying back this money within the next few months" and that plaintiff would be advised by mail if there was any default or problems with the first deed of trust on the property; that defendant defaulted in making payments on the first deed of trust; that the holder of the first trust deed filed notice of default; that defendant failed to inform plaintiff of the default or the notice of default and thus prevented plaintiff from taking steps to protect his interest; and that the security of the second deed of trust had become valueless.

The third count was somewhat different. It alleged that on September 1, 1972, Allen R. Snapp and LaTrisia Snapp executed and delivered a promissory note in the amount of $2,800 and a second trust deed to secure the note to Lawrence Arnold Berger and his wife, Callie Y. Berger; that the same day the Bergers assigned the note and deed of trust to plaintiff; that at the time of the assignment of the note and deed of trust to plaintiff Mr. and Mrs. Snapp knew that the payments on the first deed of trust were in arrears; that plaintiff paid valuable consideration to Mr. and Mrs. Snapp and Mariner Savings and Loan Association for the assignment of the note and deed of trust; that the second deed of trust assigned to plaintiff has become valueless; that defendants Eugene Mayo, Caroline Mayo, Allan R. Snapp, LaTrisia Snapp and Mariner Savings and Loan Association "entered into a scheme, plan and conspiracy to defraud the Plaintiff"; that to induce plaintiff to pay for the assignment of the note and deed of trust each of the defendants made certain misrepresentations to the plaintiff including that the property described in the deed of trust "had lots of equity to protect the Plaintiff," that the property was to be renovated and refurbished forthwith, that the property was to be sold at a substantial profit as soon as renovation had been completed and that plaintiff would be paid in full at that time, that the payments on the first deed of trust were current, that the defendants would see that plaintiff would receive notice in case of any difficulty or any default in payment on the first deed of trust, that the defendants Allen R. Snapp, LaTrisia Snapp, Eugene Mayo, and Caroline Mayo would guarantee payment, that plaintiff would make a lot of money investing in second trust deeds, that plaintiff could rely on the defendants for advice in his investments, and that defendant Eugene Mayo "was experienced in real estate investments and would protect the plaintiff"; that defendant intended plaintiff to rely upon certain nonverbal representations such as the fact he drove a late-model Cadillac, wore expensive clothing, and made frequent trips to Mexico; that defendant was a licensed real estate salesman and had been the top salesman in his office in the preceding year; and that Mariner Savings and Loan Association accepted money from plaintiff on behalf of defendants Eugene and Caroline Mayo.

Following discovery proceedings and plaintiff's filing a second amended complaint which set up a fourth count against Mariner Savings and Loan Association for conversion, the matter proceeded to trial to the court as between plaintiff and the nondefaulting defendants on December 16 and 17, 1975. Pursuant to a stipulation among the parties involved, dismissals with prejudice were filed with respect to defendants

Caroline Mayo, Allen R. Snapp and LaTrisia Snapp.[3] At the conclusion of trial the court granted plaintiff's motion for leave to amend his pleadings to conform to proof, and the court rendered judgment against plaintiff as to the sole remaining nondefaulting defendant, Mariner Savings and Loan Association. However, the court rendered judgment in favor of plaintiff as to defendant on all three counts. On the first count plaintiff was awarded $2,560 compensatory damages plus interest and punitive damages of $10,000. On the second count plaintiff was awarded $2,050 compensatory damages plus interest and punitive damages of $2,000. On the third count plaintiff was awarded $2,744 compensatory damages plus a late fee and interest. No punitive damages were awarded on the third count; however, attorney fees in the amount of $362 were allowed plaintiff. The total amount of the judgment exclusive of the attorney fees and costs was $21,204.20.

After a number of unsuccessful attempts to satisfy the judgment against defendant, on or about October 8, 1976, plaintiff made application to the court for an order directing payment of a portion of the judgment ($9,194.20) from the Fund. In the verified application plaintiff alleged that defendant "was a real estate licensee and was performing acts for which a real estate license is required...when the cause of action against him occurred" and that "the judgment against defendant-licensee is grounded upon causes of action for fraud, misrepresentation, deceit or conversion of trust funds."

The Real Estate Commissioner representing the Fund opposed the application admitting that plaintiff had recovered a judgment against defendant but denying the other allegations in the application. In points and authorities filed with the court, the commissioner contended that inasmuch as plaintiff himself was licensed as a real estate salesman at the time of the transactions, he was not one of the class of persons permitted to recover from the Fund, that defendant's conduct did not involve acts for which a real estate license was required but that, on the contrary, defendant acted in the transactions as a principal, and that plaintiff had not diligently pursued his remedies against the other defendants who allegedly defrauded him.

On the same grounds as set forth in the memorandum of points and authorities, the commissioner also moved to dismiss plaintiff's applica-

---

[3]Apparently Mrs. Mayo paid $100 and Mr. and Mrs. Snapp paid $300 in consideration of the dismissals.

tion. In opposition to the motion to dismiss, plaintiff's attorney filed a declaration executed by him in which it was conceded that the first count involved a transaction in which defendant was acting as a principal and with respect to which, therefore, no real estate license was required. However, as to the other two counts, it was averred in the declaration: "In the instant case, the facts are set forth with general accuracy by the Attorney General. [Plaintiff] was in the capacity as a client on the purchase of several notes secured by deeds of trust. [Defendant] was acting as the broker on these trust deeds in two of the instances involved...."

Plaintiff's application and the Fund's motion to dismiss came on together for hearing on February 23, 1979, before a judge other than the one before whom the original trial was conducted. There was apparently a good deal of discussion in chambers, but the only evidence introduced at the hearing was the testimony of plaintiff on direct and cross-examination relating exclusively to his own licensed status and the state of his knowledge and sophistication. The testimony did not touch upon the several transactions involved or the conduct of defen- It was stipulated that defendant was at the time of the transactions a real estate licensee.[4]

Without objection, the court granted the request of plaintiff to take judicial notice of the files, records and pleadings in the case.[5] In addition, the court purported to take judicial notice of the fact the

---

[4] It is asserted by plaintiff that the parties also stipulated that the judgment against defendant was based on fraud. We do not so read the record. Counsel for plaintiff stated to the court that he believed counsel for the Fund would so stipulate. The court stated that it was its understanding "that you had no question that they were for fraud." Counsel for the Fund then said: "No, sir, your Honor. The only—as we discussed in chambers, the defenses work as to the—since the first cause of action is now withdrawn from consideration, the defense [as] to the second cause of action was whether or not—." At that point the court again began speaking, describing the defense of the Fund as to the second cause of action, that it was not a licensed transaction.

Even if this exchange may be interpreted as a stipulation, there is a further difficulty. Defendant did not participate in the proceeding and did not join in the stipulation.

In any event, however, the point is of no significance. As counsel for the Fund correctly explained to the court, the Fund may not be ordered to pay with respect to a judgment even if it was based on fraud of a licensee, if the conduct of the licensee was not such as requires a real estate license. (Bus. & Prof. Code, § 10471.)

[5] Counsel called the court's attention particularly to "the complaints and amendments thereto in the case[, the] judgment[,]...the minutes of the Court," and "the form of the judgment itself."

transaction alleged in count 2 of the first amended complaint involved conduct requiring a real estate license.

Having conceded that the first cause of action was based upon activity not requiring a license, plaintiff withdrew his request that the Fund be ordered to pay anything on account of the judgment as to the first count. The court ruled that plaintiff was entitled to an order against the Fund for payment of $6,946.28 referable to counts 2 and 3 of the first amended complaint. The Fund's motion to dismiss was denied.

On appeal the Fund reasserts virtually all of its contentions in the trial court. Defendant joins in those contentions and in addition appears to contend that the judgment is void or voidable inasmuch as the judgment was rendered on the basis of pleadings amended to conform to proof after the time his default was entered.[6]  ▮▮▮  Save one, we do not pass on appellants' other contentions, because the record discloses there was no competent evidence presented at the hearing, by judicial notice or otherwise, that plaintiff's judgment against defendant was obtained "under grounds of fraud, misrepresentation, deceit, or conversion of trust funds arising directly out of any transaction when the judgment debtor was licensed and performed acts for which a license is required...." (Bus. & Prof. Code, § 10471.)

The nature of the evidence received at the hearing has already been described. There is nothing in the record indicating that the declarations filed in support and in opposition to plaintiff's application and the Fund's motion to dismiss were received in evidence, but even if they could be considered, they contain no competent evidence that the transactions underlying counts 2 and 3 of the first amended complaint involved activity for which a real estate license was required. The declaration of plaintiff himself stated in the statutory language that that was the case, but the statement was wholly conclusory, could hardly be testified to in that form by plaintiff, and, moreover, was said to be true with respect to all counts collectively, including count 1 as to which it was conceded at the hearing no conduct requiring a license was involved. The declaration executed by plaintiff's attorney also contained a very general, conclusory statement that in two of the transactions plaintiff was acting as a client and defendant acted as a broker. Obviously,

---

[6]Defendant asserts that no such amendment was ever served on him, and so far as the record discloses no such amendment was ever filed.

the statement of those conclusions would not constitute competent testimony.

So that we might know what the trial court had before it, we have ordered up the file and have read all of the pertinent documents, including the pleadings, the judgment and the exhibits attached to the pleadings, consisting of the trust deeds, notes and assignments involved. None of them establish that the transactions involved actions on the part of defendant that required a real estate license.

The pleadings strongly indicate that in the transaction forming the basis for count 2, defendant was acting as a principal for his own account. The only possible doubt might lie in the fact that the note and deed of trust executed by defendant were to Mr. and Mrs. Willming, but plaintiff alleged that Mr. and Mrs. Willming were the agents of defendant and that the money paid by him to Mariner Savings and Loan was received by it for and on behalf of defendant. The documents themselves tend to confirm that the Willmings were used simply as a "straw man" and that, as alleged by the plaintiff, the transaction really involved a loan from plaintiff to defendant for which he received the promissory note and deed of trust. The note, deed of trust and assignment are all dated November 27, 1972, and the deed of trust and the assignment were both notarized on December 6, 1972, by the same notary public. Further, the deed of trust and the assignment were recorded simultaneously at 8:01 a.m., December 26, 1972.

Subdivision (a) of section 10133 of the Business and Professions Code expressly excludes from the definitions of a broker and a salesperson, "[a]nyone who directly performs any of the acts within the scope of this chapter *with reference to his own property*...." (Italics added.) The allegations in plaintiff's pleadings and the documents attached as exhibits do not indicate that defendant was acting other than as a principal with respect to his own property as to the transaction involved in count 2, and there is nothing else in the record to support the trial court's conclusion that defendant's activity required a real estate license. Certainly the matter was not the proper subject of judicial notice.

There is even a more fundamental defect in the showing made by plaintiff at the hearing on his application. █ Except to the extent that the failure to answer an allegation in pleadings might constitute an admission, allegations in pleadings do not constitute evidence.

As is hereafter more fully discussed, article 3 of the Business and Professions Code (§ 10470 et seq.) clearly contemplates the presentation of evidence to establish the plaintiff's right to recovery against the Fund, not just argument.

Apparently the trial court was persuaded by plaintiff's argument that his judgment against defendant constituted prima facie evidence of or created a rebuttable presumption of his right to recovery from the fund. In the case of some judgments recovered other than by default that would be true. (See Bus. & Prof. Code, §§ 10473, 10473.1.) However, in the case of a default judgment, section 10473.1 of the Business and Professions Code specifically provides: "Whenever an applicant's judgment is by *default*, stipulation, or consent, or whenever the action against the licensee was defended by a trustee in bankruptcy, the *applicant* shall have the burden of proving his cause of action for fraud, misrepresentation, deceit, or conversion of trust funds. *Otherwise*, the judgment shall create a rebuttable presumption of the fraud, misrepresentation, deceit or conversion of trust funds." (Italics added.) This specific provision controls the more general recitation in Business and Professions Code section 10473: "The judgment shall be only prima facie evidence of such cause of action and for the purposes of this article shall not be conclusive." We further note that the ultimate burden of the applicant is not just to prove his judgment but, rather, to prove that he had "a valid cause of action within the purview" of the statutory provisions. (Bus. & Prof. Code, § 10473; see also § 10473.1.)

For many of the same reasons, what the trial court had before it is also insufficient to establish that defendant's activities in respect to the transaction underlying count 3 required a real estate license. Looking to the allegations in plaintiff's pleadings, it appears that the promissory note and deed of trust involved were executed and delivered by Mr. and Mrs. Snapp with respect to property owned by them to Mr. and Mrs. Berger and that Mr. and Mrs. Berger assigned the note and deed of trust to plaintiff. There is no direct allegation that defendant had anything to do with the transaction other than that he, mostly lumped together with the other defendants, made certain representations concerning the profitability of the transaction, guaranteeing payment and "protecting" the plaintiff. It was alleged that defendant was a licensed real estate salesman and had been the top salesman in his office in the preceding year and, by incorporation by reference, that some unspecified sum of money was paid as consideration for the as-

signment to Mariner Savings and Loan Association which was acting as defendant's agent. Thus, from the pleadings the nature of defendant's connection with this transaction is completely unknown. The documents involved in the transaction contain nothing whatever suggesting that defendant had anything to do with the transaction. Both the deed of trust from the Snapps to the Bergers and the assignment from the Bergers to plaintiff are dated September 1, 1972; the two documents were recorded simultaneously on September 19, 1972; and they both indicate that recording was requested by plaintiff, whose name and address appear at the top of each document for return after recordation by the recorder.

█ The statutory provisions authorizing recovery from the Fund found in article 3 of the Business and Professions Code (§ 10470 et seq.) clearly indicate that the Legislature contemplated a full evidentiary hearing on an application for recovery against the Fund. Section 10472 provides that "[t]he court shall conduct a hearing upon such application," authorizes continuances and specifies what the applicant must show. Section 10473 provides that the court shall order payment by the Fund "only upon a determination that the aggrieved party has a valid cause of action within the purview of" the statutory provisions. Section 10473.1 provides that "[t]he judgment debtor may defend any such action on his own behalf and shall have recourse to all appropriate means of defense and review, including examination of witnesses." (2c) One of the facts an applicant is required to prove by the presentation of evidence is that his judgment against the licensee was obtained under grounds of fraud, misrepresentation, deceit, or conversion of trust funds "arising directly out of any transaction when the judgment debtor was licensed *and performed acts for which a license is required....*" (Bus. & Prof. Code, § 10471, italics added; *Robinson* v. *Murphy* (1979) 96 Cal.App.3d 763, 767-768 [158 Cal.Rptr. 246].) There is no evidence in the record that would support a finding that the acts of defendant in connection with the transaction underlying count 3 required a real estate license.

The order appealed from must therefore be reversed. Inasmuch as retrial appears likely and the possibility is great that the question will again arise, it is necessary for us to pass upon one other legal argument of appellants, that plaintiff is precluded from recovering from the Fund in any event because at the time of the transactions involved he, himself, was a licensed real estate salesman. The argument apparently is that real estate licensees are not included in the class of persons meant

to be afforded relief by the statute. (Cf. *Middelsteadt* v. *Karpe* (1975) 52 Cal.App.3d 297, 301-303 [124 Cal.Rptr. 840].)

We, of course, do not know what the evidence might show upon retrial, but from the record before us it would appear that plaintiff was acting in respect to these transactions not as a licensee, but on his own behalf as a principal. Just as such a licensee acting as a principal as to his or her own property is treated as a member of the public, not as a licensee, for purposes of imposing liability upon the Fund, we can see no reason why a licensee who is acting as a principal with respect to his or her own property should not be considered a member of the public for purposes of recovery from the Fund. Since the acts of the defrauded licensee did not require a real estate license, the fact that he or she was a licensee is an irrelevancy. (Cf. *Fox* v. *Prime Ventures, Ltd.* (1978) 86 Cal.App.3d 333, 336 [150 Cal.Rptr. 202].) *Middelsteadt* v. *Karpe, supra*, 52 Cal.App.3d at pages 302-303, is not controlling. In that case and in the cases relied on by the court the person claimed to have been wronged was a licensee acting *qua* licensee. ■ We conclude that a defrauded licensee who was acting as a principal in the transaction and whose conduct did not require a real estate license is not precluded from recovery against the Fund by virtue of the fact that he or she is a licensee.[7]

The order is reversed.

Tamura, Acting P. J., and Morris, J., concurred.

---

[7]Rather obviously the licensed status of a party who claims to have been defrauded is germane to the issues of lack of knowledge and justifiable reliance.