[No. AO15073. First Dist., Div. Three. Aug. 22, 1983.]

JEFF V. MERRIFIELD, Plaintiff and Appellant, v.
JAMES A. EDMONDS, JR., as Real Estate Commissioner, etc.,
Defendant and Appellant.

338

**COUNSEL**

Hoge, Fenton, Jones & Appel, William J. Elfving and Peter Waite for Plaintiff and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, and Richard F. Finn, Deputy Attorney General, for Defendant and Appellant.

**OPINION**

**BARRY-DEAL, J.**—James A. Edmonds, Jr., as Commissioner of the Department of Real Estate (Commissioner), appeals from a judgment directing payment of $7,000 from the separate account in the real estate fund for purposes of real estate education, research, and recovery (the Fund) to Jeff V. Merrifield (plaintiff), who had obtained a judgment against Darrell Jones (defendant), a licensed real estate salesperson. Plaintiff also appeals. We conclude, as to the Commissioner's appeal, that the trial court erred in directing payment of the $7,000, because plaintiff's judgment for this amount did not come within the provisions of Business and Professions Code section 10471.[1] As to plaintiff's appeal, we find that the trial court properly denied plaintiff recovery of other losses because they arose from transactions which were not within the purview of defendant's license.

## I. THE FACTS

Plaintiff, a practicing dentist, became acquainted with defendant, a licensed real estate salesperson, when defendant became a patient. Plaintiff used defendant as his agent in the purchase of an apartment building on South Avenue in Turlock. Defendant was then working as an agent in a realtor's office, Allstate Real Estate, in Modesto. While this transaction was being negotiated, on June 19, 1978, plaintiff loaned defendant $3,000, in exchange for which defendant signed a promissory note for $3,300, ". . . to be paid in full and no further [*sic*] than a year later." Plaintiff loaned the money to defendant for "[f]inancial assistance," and characterized the loan as an "advance on commissions" earned by defendant. The note was never paid.

Later, defendant acted as plaintiff's agent in negotiating a second purchase of real property on Olive Street in Turlock. On January 3, 1979, plaintiff loaned defendant $4,000, secured by a note due September 1, 1979. This loan was never paid. Plaintiff also characterized this loan as an "advance . . . against future commissions." The purchase of the Olive Street property was never consummated because plaintiff withdrew from the transaction in February 1979.

After purchasing the South Avenue property, plaintiff retained defendant as his property manager of the apartment building. Defendant's duties included collection and deposit of rent, placement of tenants and maintaining a reasonable occupancy level, general maintenance, property improvement,

---

[1]All statutory citations are to the Business and Professions Code unless otherwise indicated.

and securing the services of an assistant resident manager. The parties did not enter into a written agreement. Defendant's salary was to be based on a formula of $3.50 per unit per month. Plaintiff paid him $1,000 on October 2, 1978, $500 on December 10, 1978, and $727.10 in March 1979. It is not clear from the record how plaintiff arrived at these figures.

While defendant was acting as property manager, plaintiff gave him a check for $521.54, with defendant as payee, to be used as "petty cash" for paying certain maintenance and supply expenses. Defendant never paid these bills, and plaintiff had to pay the creditors later.

Some tenants paid their rent to defendant in cash. He would then write a personal check to be deposited in plaintiff's rental account. Three of these checks totalling $1,319.50 were returned for insufficient funds. Defendant never reimbursed plaintiff.

Plaintiff filed a complaint against defendant for his losses arising out of the above transactions, alleging causes of action for breach of fiduciary duty, intentional misrepresentation, conversion, money had and received, debt, account stated, and money owed. Defendant, through counsel, filed a "General Denial" to the complaint, but did not appear for trial. Judgment was entered in favor of plaintiff in the amount of $10,268.14, plus interest in the amount of $1,395.86, plus costs. (See Code Civ. Proc., § 594.)

On May 5, 1981, plaintiff filed an application in the court for payment from the Fund pursuant to section 10471. The trial court concluded that the loans of $3,000 and $4,000 were recoverable, and judgment was entered accordingly. The Commissioner's appeal and plaintiff's appeal followed.

## II. Discussion

### A. *The Commissioner's Appeal*

Section 10471 provides in relevant part that an aggrieved party may apply for recovery from the Fund if he obtains a judgment against a licensed real estate broker or salesperson ". . . under grounds of fraud, misrepresentation, deceit, or conversion of trust funds arising directly out of any transaction when the judgment debtor was licensed and performed acts for which a license is required under this part, . . ." "[T]his part" refers to part 1 (Real Estate Law) of division 4 of the Business and Professions Code, and deals with "Licensing of Persons." (§ 10000 et seq.)

It was stipulated that defendant was a licensed real estate salesperson at all relevant times. But before recovering under section 10471, plaintiff had

to show that the following facts were also true: (1) plaintiff obtained a judgment based on fraud, misrepresentation, deceit, or conversion of trust funds; (2) defendant's improper acts arose directly out of a transaction; (3) defendant was licensed; and (4) the transaction was one for which a license is required under the Real Estate Law. (§ 10471; see also § 10472 for additional requirements not relevant here.)

### (1) *The Judgment*

■ The existence of a judgment against a defendant-licensee normally creates a rebuttable presumption that the first element exists. However, where the judgment in favor of the applicant ". . . was by default, stipulation, or consent, . . . the applicant shall have the burden of proving that the cause of action against the licensee was for fraud, misrepresentation, deceit, or conversion of trust funds. . . ." (§ 10473; *Buccella* v. *Mayo* (1980) 102 Cal.App.3d 315, 325 [162 Cal.Rptr. 369].)

Despite the Commissioner's characterization of it as such, the underlying judgment herein was not a "default judgment" (emphasis omitted), but was one entered pursuant to Code of Civil Procedure section 594. That section provides in pertinent part that where a defendant who has answered the complaint receives proper notice of trial but does not appear, the plaintiff may proceed with his case and take judgment. This is what occurred in the case at bench. The hearing was one which was "uncontested"; it was not a default hearing (*Wilson* v. *Goldman* (1969) 274 Cal.App.2d 573, 576-577 [79 Cal.Rptr. 309]), and the judgment was not a default judgment.

Neither does it appear that the judgment was entered by consent or stipulation. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 158, p. 2814.) We therefore conclude that the judgment created the rebuttable presumption under section 10473.[2]

■ The evidence regarding the $7,000 loans adduced at the hearing rebutted that presumption. Upon the facts which we summarized above, we cannot say that the trial court erred when it found that defendant's conduct did not amount to fraud or deceit, but that it constituted "breach of fiduciary duty," which is not a basis for recovery from the Fund.

In its memorandum of decision the trial court found that defendant's failure to repay the $7,000 amounted to a conversion of trust funds within the

---

[2]We perceive no real difference between a default judgment and one entered pursuant to Code of Civil Procedure section 594 for purposes of a hearing on an application for recovery from the Fund. However, we leave to the Legislature the question of whether such a judgment should be included in the list of those which do not raise the presumption under section 10473.

meaning of section 10471. This was incorrect. The parties agree that the $7,000 was not trust funds within the meaning of section 10145 (licensee accepting funds from others in connection with a real estate transaction must place them in escrow or trust fund account). (See *Circle Oaks Sales Co.* v. *Smith* (1971) 16 Cal.App.3d 682 [94 Cal.Rptr. 232].) Nevertheless, plaintiff argues that a constructive trust arose when defendant converted plaintiff's funds. (See generally 7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 134, p. 5490.) The flaw in this argument is that the undisputed evidence shows that plaintiff loaned the money to defendant for the latter's personal use, not for the benefit of another, as is the case in a trust situation. When defendant failed to repay the loan, he breached a promise to pay plaintiff; he did not convert trust funds which belonged to or were held for plaintiff. The cases upon which plaintiff relies are factually distinguishable in this regard and are therefore inapposite. (*Nordahl* v. *Department of Real Estate* (1975) 48 Cal.App.3d 657, 659 [121 Cal.Rptr. 794] [defendant received funds from plaintiff to invest for plaintiff, then used them for his own purposes]; *Dombalian* v. *Fox* (1979) 88 Cal.App.3d 763, 765 [152 Cal.Rptr. 86] [broker forged clients' initials to escrow instructions and thereby converted their funds to his use].)

### (2) *Arising Directly From a Transaction*

The loans did not arise "directly" from the real estate transactions. Although plaintiff characterized the loans as "advance[s] on commissions," the circumstances indicate that they were simply personal loans. The first loan was made in June 1978 for one year, but escrow closed, and commissions on the South Avenue purchase were paid in August 1978. Plaintiff testified that the loan was for "[f]inancial assistance." The second loan was made in January 1979 for eight months, but the pending real estate transaction was never consummated. Thus, despite plaintiff's characterization, the payments to defendant cannot be deemed prepayment of commissions "arising directly out of" the real property transactions within the meaning of section 10471.

### (3) & (4) *Defendant Is Licensed and Acts Require a License*

Section 10130 declares it unlawful for anyone to act as a real estate broker or salesperson without first obtaining a license. Section 10131 defines real estate broker as one who does certain enumerated acts (such as negotiating the purchase or sale of real property) for another and for compensation. Section 10132 defines real estate salesperson as one ". . . who, for a compensation or in expectation of a compensation, is employed by a licensed real estate broker to do one or more of the [enumerated] acts [which a broker may do]." █ A real estate salesperson cannot contract in his or

her own name or accept compensation except from the broker under whom he or she is licensed. (§ 10137; *Grand* v. *Griesinger* (1958) 160 Cal.App.2d 397, 406 [325 P.2d 475].)

The taking of personal loans and the giving of promissory notes therefor are not activities which require a real estate license under the above code provisions. We therefore conclude that the trial court erred in granting plaintiff recovery from the Fund for his losses occasioned by the two loan transactions. (See *Froid* v. *Fox* (1982) 132 Cal.App.3d 832, 839-840 [183 Cal.Rptr. 461]; *Buccella* v. *Mayo, supra,* 102 Cal.App.3d at pp. 322-326; *McGaughey* v. *Fox* (1979) 94 Cal.App.3d 645 [156 Cal.Rptr. 593].)

### B. *Plaintiff's Appeal*

The undisputed evidence showed that while defendant was acting as plaintiff's manager of the South Avenue property, he misappropriated $1,319.50 in collected rents, $521.54 from petty cash, and an amount which is not clear from the record in salary advances. It is apparent from the size of the judgment recovered in the proceeding under Code of Civil Procedure section 594 that plaintiff's recovery included these sums. The court below denied plaintiff's application for recovery from the Fund as to these transactions, stating in its memorandum of decision, ". . . as to the property management aspect, . . . the defendant was not acting *within the purview of his license* as a real estate salesman." (Italics added.) Plaintiff assigns this holding as error on his appeal. We agree with the trial court.

Section 10471 conditions recovery from the Fund on, inter alia, a showing that the loss arose ". . . directly out of any transaction when the judgment debtor was licensed and performed *acts for which a license is required* under this part, . . ." (Italics added.)

The property management acts which plaintiff hired defendant to perform and which defendant in fact performed for plaintiff require a real estate *broker's* license. (§ 10131.)[3] Defendant was licensed as a real estate *salesperson.*

---

[3]Section 10131 provides in relevant part: "A real estate broker within the meaning of this part is a person who, for a compensation or in expectation of a compensation, does or negotiates to do one or more of the following acts for another or others: . . . [¶] (b) Leases or rents or offers to lease or rent, or places for rent, or solicits listings of places for rent, or solicits for prospective tenants, or negotiates the sale, purchase or exchanges of leases on real property, . . . or collects rents from real property, or improvements thereon, . . ." Section 10131.01 states that the above quoted subdivision does not apply to *resident* apartment managers or their employees. Defendant was not a resident apartment manager. (In his declaration in support of his application for payment from the Fund, plaintiff stated that defendant was not a resident manager. Plaintiff testified that one of defendant's duties was ". . . the ultimate securing of what we call an assistant resident manager, somebody who would be living on site . . . .")

Thus this cases raises an issue which our research reveals to be one of first impression: is recovery under section 10471 permitted where the loss arose directly out of a transaction when the judgment debtor was licensed as a real estate *salesperson* and he or she improperly performed acts for which a real estate *broker's* license is required? We answer in the negative.

One principle of statutory construction often cited is that the words of a statute should be construed according to their ordinary meaning. (E.g., *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Prunty v. Bank of America* (1974) 37 Cal.App.3d 430, 436 [112 Cal.Rptr. 370].) If we were to apply only this rule to the language under consideration, we would find plaintiff's contention persuasive, since the statute merely requires that the licensee perform an act for which "*a*" license is required under the "part" of the code dealing with licensing of both salespersons and brokers. Thus, the ordinary meaning of the word "a" would render this interpretation: the loss arose ". . . directly out of any transaction when the judgment debtor was licensed [as a broker or salesperson] and performed acts for which a [broker's or salesperson's] license is required under this part, . . ."

■ However, the rule regarding ordinary meaning of words is a corollary to the fundamental principle of statutory construction which requires us to ascertain the Legislature's intent and to give effect to the purpose of the statute, viewing its words in the context of the entire statutory scheme. (*Moyer v. Workmen's Comp. Appeals Bd., supra,* 10 Cal.3d at p. 230.) ■ The purpose of the Real Estate Brokers' Act, of which section 10471 is a part, is to raise the standards of the real estate profession by requiring its members to deal fairly and ethically with the public. (*Middelsteadt v. Karpe* (1975) 52 Cal.App.3d 297, 302 [124 Cal.Rptr. 840].) Within the context of that act, the purpose of section 10471 is to compensate innocent members of the public who are victimized by dishonest licensees. (See *Powers v. Fox* (1979) 96 Cal.App.3d 440, 447 [158 Cal.Rptr. 92]; *Robinson v. Murphy* (1979) 96 Cal.App.3d 763, 766 [158 Cal.Rptr. 246]; *Nordahl v. Department of Real Estate, supra,* 48 Cal.App.3d at p. 663.)

■ In our view, plaintiff does not qualify as an innocent member of the public, since he entered into an illegal contract with defendant. Plaintiff's direct hiring of defendant as a nonresident apartment manager was illegal because (1) nonresident apartment management is a broker's function (§ 10131, subd. (b)), (2) a licensed salesperson can only act as a nonresident manager through a licensed broker (§ 10132), and (3) a salesperson can only contract through the broker under whom he or she is licensed (§ 10137). (See *Grand v. Griesinger, supra,* 160 Cal.App.2d at p. 406.)

Section 10139 provides a criminal penalty for one acting as a broker without a license, and section 10138 provides a misdemeanor penalty for the client of such person.[4] The Legislature cannot in reason have intended on the one hand to impose upon one in plaintiff's position a criminal penalty and on the other hand to allow him compensation from the Fund.

■ We therefore interpret the language in question as requiring that the loss arose either "directly out of any transaction when the judgment debtor was licensed [as a broker] and performed acts for which a [broker's] license is required under this part, . . ." or "directly out of any transaction when the judgment debtor was licensed as a [salesperson] and performed acts for which a [salesperson's] license is required under this part, . . ." This interpretation is the only proper one because it best attains the purposes of the statute. Although it enlarges the ordinary meaning of the words used, it thereby avoids absurd results which clearly could not have been intended. by the Legislature. (*Moyer* v. *Workmen's Comp. Appeals Bd., supra,* 10 Cal.3d at p. 232.)[5]

### III. CONCLUSION

Recovery from the Fund of the $7,000 judgment arising from the promissory notes cannot stand. The court properly denied recovery from the Fund of plaintiff's losses arising from the apartment management transactions.

### IV. DISPOSITION

That portion of the judgment awarding plaintiff recovery of $7,000 from the Fund is reversed; in all other respects the judgment is affirmed. Costs to the Commissioner on the appeal and on the cross-appeal.

Scott, Acting P. J., and Feinberg, J., concurred.

The petition of plaintiff and appellant for a hearing by the Supreme Court was denied October 19, 1983.

---

[4]Section 10138 provides in relevant part: "It is a misdemeanor, punishable by a fine of not exceeding fifty dollars ($50) for each offense, for any person . . . to pay or deliver to anyone a compensation for performing any of the acts within the scope of this chapter, who is not known to be or who does not present evidence to such payor that he is a regularly licensed real estate broker at the time such compensation is earned. . . ."

[5]As to the effect of illegality of the contract, see generally *Fellom* v. *Adams* (1969) 274 Cal.App.2d 855 [79 Cal.Rptr. 633]; *Estate of Prieto* (1966) 243 Cal.App.2d 79, 85-86 [52 Cal.Rptr. 80]; *Richardson* v. *Roberts* (1962) 210 Cal.App.2d 603 [26 Cal.Rptr. 829]; *Willig* v. *Gold* (1946) 75 Cal.App.2d 809 [171 P.2d 754].)