Charlene BURNETT, Vernon Hulme and Harry Havins, Appellants,

v.

Lewis D. FOLEY and The Texas Real Estate Commission, the State of Texas, Appellees.

No. 2–83–036–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 23, 1983.

Paul C. Isham and Sam Lively, Wynn, Brown, Mack, Renfro & Thompson, Fort Worth, for appellants.

Jim Mattox, Atty. Gen., and George Warner, Asst. Atty. Gen., Austin, for appellees.

Before JORDAN, BURDOCK and HILL, JJ.

## OPINION

JORDAN, Justice.

The question for decision on this appeal is whether, under the facts recited herein, appellants, all of whom are licensed real estate salespersons, are entitled to recover from the Real Estate Recovery Fund established pursuant to TEX.REV.CIV.STAT. ANN. art. 6573a, sec. 8 (Vernon Supp.1982–1983) (Real Estate Act). The pertinent section of this Act provides, generally, that the fund shall be used for the reimbursement of "aggrieved persons" who suffer monetary damages due to acts committed by licensed real estate brokers or salesmen, provided that the act was performed in the scope of activity which constitutes a broker or salesman as defined in the Act.

Appellants filed a claim for reimbursement from the Real Estate Recovery fund to collect a commission due them from one Lewis D. Foley, a real estate broker with whom they had been associated. After a hearing, the trial court rendered a take-nothing judgment against appellants, holding that they, as licensed real estate salespersons, were not "aggrieved persons" within the meaning of section 8 of the Real Estate Act.

We affirm.

Appellants are all licensed real estate salespersons who at one time were associated in the real estate business with Lewis D. Foley. While so associated, appellants negotiated the sale of certain property to T & G Properties. Thereafter, appellants claimed a portion of the real estate commission on this sale which had been paid in its entirety to Foley. Foley, however, refused to pay any of the commission to appellants.

Appellants then sued Foley to recover their portion of the commission from the sale of the property. A compromise settlement of this suit was reached with Foley agreeing to assign and deliver to appellants a $30,000.00 note executed by T & G Properties and appellants agreeing to dismiss their lawsuit with prejudice. Appellants did in fact dismiss the suit, but unfortunately, did so before receiving the promissory note from Foley. The note has never been delivered to appellants.

Foley had represented to appellants that the note was in the possession of a certain bank, and that the bank would deliver the note upon appellants' request. None of Foley's representations were true and appellants have never received any payment of the commissions due them from the sale of the property.

After dismissal with prejudice of the original suit against Foley, appellants sued Foley, in another district court, alleging breach of the settlement agreement and that Foley's deceit, misrepresentations, fraud, and trickery had caused them to dismiss their original lawsuit with prejudice. Appellants alleged damages in the amount of $30,000.00. A default judgment

was obtained in this suit against Foley, and appellants took all necessary steps to collect payment of the $30,000.00 judgment, to no avail.

Appellants then, after complying with all the requirements of section 8, part 3(a) and (b), filed this verified claim against the appellee Texas Real Estate Commission for payment from the Real Estate Recovery Fund of the amount owed them by Foley.

The cause was submitted to the trial court on stipulated facts and the court denied appellants recovery from the Fund, finding that appellants and Foley were all licensed by the Texas Real Estate Commission at the time the cause of action arose which resulted in the default judgment. The court also found that this judgment, upon which the claim against the Fund was based, had arisen out of a dispute among the parties over the division of a real estate commission, and that because of appellants' status as real estate licensees in the transaction, they were not "aggrieved persons" within the meaning of section 8 of the Real Estate License Act.

Appellants assign as their sole point of error the holding of the trial court that they were not "aggrieved persons" under section 8 and were thus not entitled to payment from the Recovery Fund.

As previously stated, the purpose of the Real Estate Recovery Fund, as set out in the statute itself, is to reimburse "aggrieved persons" who suffer monetary damages by reason of certain acts committed by a duly licensed real estate broker or salesman, provided the acts were performed in the scope of activity which constitutes a broker or salesman as defined by the Act. The Act does not specifically define the term "aggrieved persons."

Appellants argue that section 8, part 1(a), establishing the Real Estate Recovery Fund, entitles them to a recovery as "aggrieved persons" since they suffered monetary loss as a result of fraudulent and deceitful conduct on the part of a licensed real estate broker. However, a reading of the entire Act, and particularly of the provi-

sions for reimbursement from the recovery fund, clearly indicates that it is the general public, those not licensed to deal in real estate, for whom the protection was designed. There is no mention of recovery or reimbursement for real estate brokers or salesmen who are victimized and defrauded by other members of the real estate industry. Indeed, if agents and brokers were allowed to recover from the Real Estate Recovery Fund every time another broker or salesman fraudulently or deceitfully deprived him or her of a commission, there would, in all probability, be a significant depletion of the fund available to reimburse the general public.

The provisions of the Act must be construed in light of its purpose and the evils against which it was designed to protect. In *Eberman v. Massachusetts Bonding & Ins. Co.*, 41 A.2d 844, 846 (Mun.App.D.C. 1945), a case construing a real estate license act and determining the question of whether a real estate salesman was within the class intended to be protected by the Act and the bond given pursuant to it, the court stated:

> When the legislature enacts a statute regulating a business for the purpose of protecting the public against existing or potential evils in that business, those engaged in the business are not generally regarded as a part of that public. The public is protected against them and not they against their fellow businessmen.

See also *Gilewicz v. Home Indemnity Company*, 150 A.2d 627 (Mun.App.D.C.1959).

There is strong support for the trial court's holding in this case in a California case, *Middelsteadt v. Karpe*, 52 Cal.App.3d 297, 124 Cal.Rptr. 840 (1975). California has a system of protection similar to the recovery fund established by the Texas Real Estate License Act, and in *Middelsteadt*, the appellate court had before it the same question presented in the case now before us. In *Middelsteadt*, a real estate licensee was denied payment from the California Real Estate Education, Research and Recovery Fund in a case involving a commission dispute between a licensed broker and

his sales agent, the court reasoning that it was the clients of the licensed real estate agents which the fund was designed to protect, not the licensees themselves. The Court stated that the goal of the license act in California was to require licensed real estate agents "to deal fairly and ethically *with their clients." Middelsteadt, supra* at 843. (Emphasis in original). The court also said that licensees were better able than non-licensees to protect themselves against the fraudulent and unscrupulous conduct of their fellow licensees. Thus, licensees fell outside the class of individuals sought to be protected by reimbursement from that recovery fund.

The California Act discussed in *Middelsteadt,* like the Texas Act under consideration here, did not define "aggrieved persons." The court, in *Middelsteadt,* reached its conclusion by resorting to the general purpose of the law and cases with analogous facts.

Appellants contend that the later case of *Buccella v. Mayo,* 102 Cal.App.3d 315, 162 Cal.Rptr. 369 (1980) "weakens" the holding of *Middelsteadt, supra,* with respect to the right of a real estate licensee to recover from a real estate recovery fund. We do not agree. *Buccella* simply stands for the proposition that a licensee is not precluded from recovery from the California recovery fund when he acts *as a principal* in a real estate transaction. In *Buccella,* a real estate licensee was allowed recovery from the California fund where he was in the same position, as principal in the real estate transaction, as a member of the general public. *Buccella* in no way contradicts the holding of *Middelsteadt.*

It has been stated by the Texas courts that the purpose of the Real Estate License Act is to eliminate or reduce fraud that might be occasioned *on the public* by unlicensed, unscrupulous, or unqualified persons. *See Henry S. Miller Co. v. Treo Enterprises,* 585 S.W.2d 674 (Tex.1979). *See also Texas Real Estate Comm. v. Century 21 Sec.,* 598 S.W.2d 920, 922 (Tex.App.—El Paso 1980, no writ).

The court in *Century 21* did allow payment out of the Recovery Fund to a licensed real estate broker because the broker had reimbursed innocent members of the public who had been defrauded by another licensed real estate agent. The decision in that case was based upon the doctrine of subrogation. The court, after saying it had "no quarrel" with the holding of *Middelsteadt,* also said that "[w]hile the Appellee [the broker] may not have been an 'aggrieved party,' he was subrogated to the rights of those who were." *Century 21, supra.* In essence, then, the holding in *Century 21* turned on the fact that the real estate licensee had assumed the same position as the original clients in the transaction and was thus entitled to recovery from the Fund.

■ We think it is clear that the class intended to be protected by the Texas Real Estate License Act and the Recovery Fund established pursuant thereto was the general public, the clients of those engaged in the real estate business. This is not to say that a real estate licensee is automatically precluded from a recovery from the fund simply by virtue of his status as a licensee, but rather that, in order to recover, the licensee must have stood as a principal in the transaction as would a member of the general public.

Appellants in the instant case do not occupy such a position. In the original real estate transaction involving the sale of the property to T & G Properties, appellants were acting *as licensees* and did not occupy the position of principal or client in that transaction. Moreover, the real estate transaction itself had been entirely concluded prior to the dispute between appellants and Foley which gave rise to the instant claim against the recovery fund. The basis of the instant claim was Foley's breach of the compromise settlement, a distinct transaction from the original sale of the real estate.

The Act specifically requires that the conduct of the licensee giving rise to the damages must have been an act performed *in the scope of activity which constitutes a*

*broker or salesman* as defined in the Act. *See* art. 6573a, sec. 8. An examination of these sections of the Act defining real estate broker and real estate salesman, art. 6573a, sections 2(2) and 4, reveals that Foley's conduct in breaching the settlement agreement was *not* an act within the scope of activity constituting him a real estate broker. Therefore, for this reason as well as those set out previously in this opinion, appellants were not entitled to a payment from the Real Estate Recovery Fund.

Appellants' point of error is overruled.

The judgment of the trial court is affirmed.