139 F.3d 690
 13 IER Cases 1399, 98 Cal. Daily Op. Serv. 1910,
98 Daily Journal D.A.R. 2688
 Kevin J. LAWSON, Plaintiff-Appellee,
v.
UMATILLA COUNTY, Umatilla County Board of Commissioners;
William Hansell, Commissioner; Emile Holeman,
Commissioner; Glenn Youngman; Bruce
Kinsch, Defendants-Appellants.
 Nos. 96-36060, 97-35634.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 8, 1998.
Decided March 18, 1998.
 
 Robert E. Franz, Jr., Springfield, Oregon, for the defendants-appellants.
 Paul B. Meadowbrook, Salem, Oregon, for the plaintiff-appellee.
 Appeal from the United States District Court for the District of Oregon; John Jelderks, Magistrate Judge, Presiding. D.C. No. CV-94-00920-JJ.
 Before: ALDISERT,* PREGERSON and TROTT, Circuit Judges.
 ALDISERT, Circuit Judge:
 
 
 1
 This appeal by Umatilla County, Oregon from an adverse judgment in an action brought under 42 U.S.C. § 1983 by Kevin Lawson, a discharged County employee, requires us to decide if Lawson possessed a constitutionally-protected property interest that prevented the County from terminating him without providing the procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.
 
 I.
 
 2
 The County hired Lawson as coordinator of its Commission on Children and Families in February 1993. The Commission's main task was to apportion state grant money among providers of service to children and families in Umatilla County. At the time of his hire, Lawson was considered a probationary employee. After receiving a positive evaluation in 1993, Lawson became a permanent employee when his probationary period ended in January 1994. The Umatilla County Personnel Policies provided that permanent employees could be disciplined only for the causes set forth therein. However, the Personnel Policies also included the following disclaimer:
 
 
 3
 Under no circumstances shall these policies be construed to act as any type of employment contract with any employee of the County of Umatilla.
 
 
 4
 In addition, the County could deviate from the Policies upon written justification to avoid "practical difficulties or unnessary [sic] hardships."
 
 
 5
 On May 31, 1994, the County Commissioners discharged Lawson for unsatisfactory job performance. This decision was confirmed by a June 10, 1994 letter to Lawson's attorney, and upheld by the Commissioners after a July 11, 1994 hearing.
 
 
 6
 Lawson filed suit, and the district court determined that he had a constitutionally-protected property interest in his position. Thereafter, a jury found that at the time he was discharged he was not afforded appropriate due process protections and awarded him damages. After a subsequent hearing, the district court awarded Lawson attorney's fees. The County appeals both awards.
 
 II.
 
 7
 The district court accepted Lawson's theory that he had a property right in his position which gave rise to a cause of action under 42 U.S.C. § 1983 against the County for deprivation of procedural due process, because he was allegedly discharged without proper notice and an opportunity to be heard. It is important to emphasize that Lawson's claim was based not on a violation of state law, but on an averment that the County encroached upon his rights protected by the federal constitution. Under the federal constitution, at-will employees possess no protected property rights and therefore are not entitled to due process before being terminated. Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir.1993).
 
 
 8
 Lawson's argument begins with the premise that all county employees in Oregon are at-will, save those covered by two exceptions: (a) civil service laws and (b) county personnel policies creating a legitimate expectation of continued employment. Lawson claims that he was an employee shielded by the Umatilla County Personnel Policies, and that therefore he was not an at-will employee. From this he contends (1) that as a protected employee, as distinguished from an at-will employee, he possessed a property right in his job, (2) that this right entitled him to federal due process procedures in his termination and (3) that his discharge by the County without being accorded such procedures gives him a cause of action under § 1983. A proper analysis requires us first to determine whether the district court properly held that-by virtue of the Umatilla County Personnel Policies-Lawson was not an at-will employee and that Lawson therefore had a constitutionally-protected property interest as a matter of law.
 
 III.
 
 9
 We review de novo an order granting or denying judgment as a matter of law. Amarel v. Connell, 102 F.3d 1494, 1517 (9th Cir.1996). Judgment as a matter of law is proper when the evidence permits a reasonable jury to reach only one conclusion. Id.; see Rule 50(a), Federal Rules of Civil Procedure. We also review de novo the district court's interpretation of state statutes. A-1 Ambulance Serv., Inc. v. County of Monterey, 90 F.3d 333, 335 (9th Cir.1996).
 
 IV.
 
 10
 State law, or some other independent source, establishes the parameters of an individual's substantive interest, Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), but federal law determines whether that interest is a property right protected by the Due Process Clause of the Fourteenth Amendment. Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978); see 16B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4030, at 425.
 
 
 11
 Whether a property right exists depends on the facts of each case, but certain established rules provide a framework for our inquiry. Of particular relevance here, Lawson had no constitutionally-protected property right if his position was "at-will" under Oregon law. See Portman, 995 F.2d at 904. We therefore must decide whether the district court properly held as a matter of law that Lawson had a state-created interest in his position that "justif[ied] his legitimate claim of entitlement to continued employment." Perry v. Sindermann, 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972); see Orloff v. Cleland, 708 F.2d 372, 377 (9th Cir.1983).
 
 
 12
 To determine the status of a county employee, the starting point is the Oregon statute describing county officers, deputies and other employees:
 
 
 13
 (1) The county court or board of county commissioners of each county shall fix the number of deputies and employees of county officers whose compensation is to be paid from county funds.
 
 
 14
 (2) All such deputies and employees shall be appointed by such county officer, and shall hold office during the pleasure of the appointing officer.
 
 
 15
 Or.Rev.Stat. § 204.601. Clearly, this statute sets forth the law of Oregon that county employees "hold office during the pleasure of the appointing officer" and is a manifestation of the general Oregon rule that "an employer may discharge an employee at any time and for any reason, absent a contractual, statutory or constitutional requirement." Patton v. J.C. Penney Co., 301 Or. 117, 719 P.2d 854, 856 (1986).
 
 
 16
 Exceptions to this general rule, however, have been established by statute and by Oregon case law. Thus, under the provisions of Or.Rev.Stat. § 204.121,
 
 
 17
 no provision of ... 204.601 shall supersede any provision of the county civil service law, and when any conflict arises between any provision of ... 204.601 and any provision of the county civil service law, then the county civil service law shall prevail.
 
 
 18
 County civil service is mandatory for counties with a population over 500,000, but smaller counties must elect into it. Or.Rev.Stat. §§ 241.020, 241.006. The parties agreed at oral argument that Umatilla County has not elected to establish civil service.
 
 
 19
 In addition to § 204.121's express civil service exception to the general at-will rule of § 204.601, case law has created an additional exception when employees in non-civil service counties become "permanent employees" pursuant to an employee handbook. See Maben v. Klamath County, 54 Or.App. 799, 636 P.2d 968, 969 (1981), amended by 57 Or.App. 730, 646 P.2d 35 (1982). Lawson argues that this second exception is applicable here.
 
 
 20
 The County argues that the Umatilla County Personnel Policies do not alter the at-will status of Lawson's employment because they include the following disclaimer:
 
 
 21
 Under no circumstances shall these policies be construed to act as any type of employment contract with any employee of the County of Umatilla.
 
 
 22
 Lawson contends that the Personnel Policies establish an exception to the general at-will rule for permanent employees. Specifically he cites § 3.2, which lists reasons for employee discipline, and § 3.3, which provides that "[n]o permanent employee shall be disciplined except for violation of established rules and regulations." It is precisely on this theory advanced by Lawson that the district court determined that Lawson's employment was an exception to the general Oregon rule that county employees are at-will employees.
 
 
 23
 The district court erred because it ignored the importance of the disclaimer in the Umatilla County Personnel Policies. Oregon courts have consistently held that a disclaimer in an employee handbook or personnel policies is sufficient to retain an employee's at-will status. See Mobley v. Manheim Servs. Corp., 133 Or.App. 89, 889 P.2d 1342, 1345 (1995) ("[T]he company may terminate [its employees] at any time for any reason."); Gilbert v. Tektronix, Inc., 112 Or.App. 34, 827 P.2d 919, 921 (1992) ("[The company] reserves the discretion to determine whether in [its] judgment the termination, or any other disciplinary action, was justified."). Furthermore, a disclaimer can retain the employee's at-will status even when the policies also provide specific reasons for termination and for an appeals process. Gilbert, 827 P.2d at 920-921.
 
 
 24
 In Mobley and Gilbert, the disclaimer constituted a retention of the at-will status. Similarly, in the case at bar, the disclaimer is an unambiguous statement that the general at-will status of County employees established by Or.Rev.Stat. § 204.601 shall not be altered by the provisions of Umatilla County Personnel Policies: "Under no circumstances shall these policies be construed to act as any type of employment contract...."
 
 
 25
 Lawson argues that his classification as a permanent employee, which the Umatilla County Personnel Policies distinguish from probationary employees, eviscerates the at-will status. We disagree. We recognize that some Oregon case law provides that a distinction between permanent and probationary employees may remove an employee from at-will status. See Maben, 636 P.2d at 969 ("If at the end of the six month period of probationary employment, the employee's work performance is satisfactory, employment shall be made permanent."); Gunsolley v. Bushby, 19 Or.App. 884, 529 P.2d 950, 953 (1974) ("All personnel are employed through the Administration Office. Unless otherwise specified, employment is presumed to be full-time and permanent during satisfactory service."). The teachings of these cases are not pertinent, however, because in neither case did the employee handbook contain a clear disclaimer like the one in the Umatilla County Personnel Policies.
 
 
 26
 The expression "under no circumstances" speaks for itself and prevents us from accepting Lawson's argument that the distinction between probationary and permanent employees somehow indicates an intent to depart from the at-will status. Section 3.2, which provides for employee discipline, and § 3.3, which provides that "[n]o permanent employee shall be disciplined except for violation of established rules and regulations," must be construed in conjunction with the "under no circumstances" disclaimer. So construed, these regulations merely provide a framework for disciplining at-will employees which is not binding on the County. In this respect, the procedures may be analogized to the appeal rights in Gilbert, which did not interfere with the court's pronouncement that an "at will employment relationship" existed. See 827 P.2d at 921 (handbook provided that: "An employee who feels his or her involuntary termination is unwarranted can make use of the Review Process and ask that management review their decision."). Accordingly, we conclude that the proper analogy is to the cases holding that, because of a disclaimer, an at-will status prevailed and hold that the district court erred in concluding that Lawson was not an at-will employee.
 
 
 27
 Having concluded that Lawson was not an at-will employee, and therefore possessed no property right in his position, we need not proceed to a discussion of procedural due process. We reverse the district court's entry of judgment in Lawson's favor.
 
 V.
 
 28
 Because we reverse the district court's judgment in favor of Lawson, he is no longer a "prevailing party" under 42 U.S.C. § 1988. Friend v. Kolodzieczak, 72 F.3d 1386, 1389 (9th Cir.1995). Therefore, we also reverse Lawson's attorney's fees award. We have considered all arguments advanced by the parties and have concluded that no further discussion is necessary. The district court's judgment and attorney's fees award are REVERSED and the proceedings REMANDED with a direction to enter judgment in favor of the Appellants.
 
 PREGERSON, Circuit Judge, dissenting:
 
 29
 I dissent because I believe that Lawson could only be fired for cause and that based on the evidence, a reasonable jury could so find. The County's policy manual clearly stated that "[n]o permanent employee shall be disciplined except for violation of established rules and regulations," and the County's conduct indicates that it believed that this provision was binding. I believe that these "rules and understandings" secured Lawson's property interest in his job. See Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (stating that property interests "are created and their dimensions are defined by existing rules and understandings ... that secure certain benefits and that support claims of entitlement to those benefits").
 
 
 30
 The majority, however, believes that as a matter of law Lawson had no property interest in his job because the policy manual also stated that "[u]nder no circumstances shall these policies be construed to act as any type of employment contract." The majority reads this contract disclaimer as retaining the at-will job status of County employees. According to the majority, the provisions in the policy manual "merely provide a framework for disciplining at-will employees which is not binding on the County."
 
 
 31
 The majority's reading of the policy manual gives permanent employees nothing more than an illusory promise of permanent employment. If probationary employees can be fired for any reason and permanent employees can be fired only for violating established rules and regulations unless the County wants to fire them for any reason, there doesn't seem to be much point in differentiating between permanent and probationary employees.
 
 
 32
 From what I can tell, the majority reaches this questionable result because it feels constrained by two premises: (1) that a person can't have a property interest in his job if he has no contractual right to his job and (2) that under Oregon case law, a disclaimer in a policy manual preserves the at-will status of employees. I don't agree with either premise.
 
 
 33
 As the Supreme Court has emphasized, a person does not need a contractual right to his job in order to have a property interest in his job; all he needs is a "legitimate claim of entitlement to the job." See Perry v. Sindermann, 408 U.S. 593, 601-03, 92 S.Ct. 2694, 2699-2700, 33 L.Ed.2d 570 (1972) (holding that a teacher without a contractual claim to job tenure "might be able to show from the circumstances ... --and from other relevant facts-that he has a legitimate claim of entitlement to job tenure," but that the teacher's claim would be defeated if "a teacher in the respondent's position has no contractual or other claim to job tenure" (emphasis added)). Such a claim of entitlement can arise from "rules or understandings," including understandings based on past practices. Id. (holding that university may have created tenure system in practice even though it had no explicit tenure system); see also, Connell v. Higginbotham, 403 U.S. 207, 208, 91 S.Ct. 1772, 1773, 29 L.Ed.2d 418 (1971) (holding that recently-hired teacher without tenure or formal contract nevertheless had property interest in job because of implied promise of continued employment). Thus, contrary to what the majority implies, the fact that Lawson had no contractual right to his job does not dictate that Lawson had no property interest in his job.
 
 
 34
 Nor does Oregon case law dictate that Lawson had no property interest in his job. No Oregon case holds that a disclaimer in a policy manual preserves the at-will status of employees regardless of the content of the disclaimer and regardless of the other facts of the case. The two Oregon cases that the majority relies on both concerned disclaimers that specifically disclaimed permanent employment. One disclaimer stated that "the company may terminate [the employee] at any time for any reason," Mobley v. Manheim Servs. Corp., 133 Or.App. 89, 889 P.2d 1342, 1345 (1995), and the other disclaimer stated that "either party may wish to terminate the relationship at some time" and the employer "intends to preserve the right of either party to do so," Gilbert v. Tektronix, Inc., 112 Or.App. 34, 827 P.2d 919, 921 (1992). Moreover, in those two cases, the employees weren't told that they were permanent employees who could only be fired for violating established rules and regulations. Thus, the only reasonable conclusion in those cases was that the employees were at-will employees.
 
 
 35
 But that's not the only reasonable conclusion in this case. The disclaimer in this case provides that the County's policies shall not be construed as any type of employment contract. This disclaimer can fairly be read as precluding employees from bringing breach-of-contract claims against the County for violating the provisions in the policy manual. Under this reading, the contract disclaimer would not preclude County employees from enforcing their other rights-including their constitutional right not to be deprived of their property in their job without due process of law.
 
 
 36
 This reading is consistent with the provisions of the policy manual that distinguish between permanent and probationary employees. This reading gives substance to the policy manual's distinction between permanent and probationary employees by at least giving permanent employees the right to due process before being fired.
 
 
 37
 This reading is also consistent with the County's conduct. For instance, this reading explains why, throughout Lawson's tenure with the County, the County acted as if permanent employees could only be fired for cause: even the County was under the logical impression that the contract disclaimer disclaimed only contract rights.[1] Tellingly, when the County argued to the district court that Lawson had no property interest in his job, the County referred to other provisions in the policy manual but never mentioned the contract disclaimer.[2] This suggests that even after Lawson filed the lawsuit, the County still believed that the contract disclaimer disclaimed only contract rights.
 
 
 38
 The present case is therefore quite different from the Oregon cases that the majority relies on. The disclaimer in this case did not specifically state that the County could terminate its employees at any time for any reason. In fact, the contract disclaimer did not address termination at all. Thus, unlike the disclaimers in the two Oregon cases, it was not clear on the face of the contract disclaimer that Lawson was an at-will employee.
 
 
 39
 Even more significantly, according to the County's policy manual, Lawson was a "permanent employee" who could not "be disciplined except for violation of established rules and regulations." The Oregon cases that the majority relies on involved no such policy-certainly not one as explicitly contrary to the notion of at-will employment as this one was.
 
 
 40
 In sum, Lawson has established the existence of rules and understandings that allowed the district court to conclude that he had a legitimate claim of entitlement to his job. I agree with the district court. The majority disagrees. Perhaps, then, this is a case where reasonable minds can differ. If so, it seems inappropriate to take this case away from the factfinder and resolve it as a matter of law against the interests of an employee who received a favorable jury verdict. For these reasons, I respectfully dissent.
 
 
 
 *
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 [1]
 The district court appeared to be under the same impression. The district court relied on the contract disclaimer to dismiss Lawson's breach-of-contract claim but not his due process claim
 
 
 [2]
 Usually, this court will not address arguments that were not raised before the trial court. But because the majority seems to assume that the County sufficiently preserved this issue for appeal, I will operate under that assumption as well