Gustavo F. ARAUJO, Plaintiff,

v.

GENERAL ELECTRIC INFORMATION SERVICES, a Delaware corporation, and Jack Erhlich, Defendants.

No. Civ. 98–667–JE.

United States District Court,
D. Oregon.

Feb. 4, 2000.

Brian J. Dobie, Portland, OR, for plaintiff.

Richard N. VanCleave, Caroline R. Guest, Davis Wright Tremaine LLP, Portland, OR, for defendant.

## OPINION AND ORDER

JELDERKS, United States Magistrate Judge.

Plaintiff Gustavo Araujo brings this employment-related action against defendants General Electric Information Services (GEIS), his former employer, and Jack Erhlich, his former supervisor. Defendants move for partial summary judgment. I grant the motion.

## BACKGROUND

Plaintiff was working for Source Services, Inc., when he first contacted GEIS through a recruiter in late 1995. He spoke directly with GEIS in November. Paula Nina, GEIS's Regional Manager in the northwest, was plaintiff's primary contact with GEIS throughout the interview process, and GEIS hired plaintiff in early 1996. Plaintiff acknowledged in his deposition testimony that Nina never told him that he could be terminated only for cause, and plaintiff never discussed the circumstances under which his employment could be terminated with any of GEIS's other managers.

On March 15, 1996, plaintiff sent Nina a facsimile copy of a General Electric application for employment which he had signed and dated as of March 6, 1996. The second to the last paragraph above plaintiff's signature stated:

> I understand that my employment with the Company would not be for any fixed period of time and that if employed I may resign at any time for any reason or the Company may terminate my employment at any time for any reason in the absence of a specific written agreement to the contrary signed by an officer of the Company.

The written offer of employment that Nina sent plaintiff on the same day included no language stating or implying that employment with GEIS could be terminated only for cause, and no language stating or implying that any termination would be subject to particular procedures.

GEIS provided plaintiff with two GE policy binders during the course of his hiring and orientation. The first was a manual entitled "Welcome to GE: An Orientation Guide for new GE Employees." The second was a handbook entitled "Your GE Benefits Handbook."

The introduction to the Manual stated that the material did not include the full details of all the applicable benefits, and noted that "any oral or written representations by a Company employee or agent, or any benefit estimates that you may receive cannot override, reverse or supplement the provisions of the plan documents." The introduction also stated, in a separate

paragraph, that "[t]his Manual does not create a contract of employment between GE and any individual." These provisions were repeated in the introduction to the Handbook.

GEIS managers decided to terminate plaintiff's employment in March 1997. Defendant Erhlich and David Gonzalez, GEIS's Human Resources Manager, originally planned to meet with plaintiff at the GEIS office in Portland, Oregon, at 3:30 p.m. on March 21, 1997. Plaintiff was told to bring his company-owned laptop computer to the meeting. However, as Gonzalez was leaving his office in San Francisco to begin the trip to Portland that day, plaintiff informed him by telephone that he would not be able to keep the scheduled appointment because of a family obligation. Gonzalez and plaintiff agreed that they would meet at the airport instead, where plaintiff and his family were scheduled to begin a trip that afternoon.

Gonzalez, Erhlich, and plaintiff met at the airport as planned. Gonzalez walked to the "food court" area to find a place to meet, while Erhlich waited as plaintiff and his family checked their luggage. Erhlich and plaintiff joined Gonzalez after plaintiff had finished checking in for his flight, and plaintiff's wife and children went to an area out of earshot from them. After Erhlich, Gonzalez, and plaintiff were seated in one of the restaurants, Erhlich told plaintiff that he had decided to terminate his employment, and Gonzalez handed him a letter outlining the reasons for that decision. The letter stated that plaintiff was being terminated because of performance-related issues, including:

1. Repeated failures and/or refusals to respond to management directives.
2. Failure to develop and maintain an adequate pipeline of prospects.
3. Failure to bring in any new business.
4. Consistent failure to make sufficient numbers of client sales calls.
5. Failure to plan appropriately on critical business issues which involve your team mates and manager.
6. Irregularities related to expense accounts.

After briefly attempting to discuss the termination decision, plaintiff rose to leave. Plaintiff alleges that Erhlich and Gonzalez stood and approached him, and that Erhlich stated that they were not leaving without the computer. Plaintiff alleges that Gonzalez grabbed his wrist while reaching for the computer. Plaintiff has testified that he raised his voice and threatened that he "would get the security and police out there," and that he cannot remember whether Gonzalez or Erhlich raised their voices. Plaintiff's wife has testified that she could not hear the mens' voices from where she was.

## PLAINTIFF'S CLAIMS

Plaintiff brings seven claims. The first claim includes four counts of alleged breach of contract. The first count of the breach of contract claim alleges that GEIS breached its contract by terminating plaintiff without cause and by failing to provide him either with written notice of the "charges against him" or to provide him "an opportunity to make a respond [sic] to a person with authority to discharge him." Plaintiff further alleges that GEIS breached his contract by failing to provide him with a "hearing or review of his discharge" that included:

(a) A decision by an impartial decision maker;

(b) A decision based exclusively on the evidence presented;

(c) Right to know the specifics of the allegations against him;

(d) The right to respond to the allegations of misuse of the credit card;

(e) A statement of the facts specific to the decision.

The second count of the breach of contract claim alleges that GEIS breached the terms of the parties' employment agreement by terminating plaintiff for taking a vacation.

The third count of the breach of contract claim alleges that GEIS breached the parties' employment agreement by terminating plaintiff for his alleged misuse of his company credit card without complying with procedures set forth in its employment manual.

The fourth count of the breach of contract claim alleges that GEIS breached the parties' employment agreement by breaching the "implied duty of good faith."

Plaintiff's second claim alleges that GEIS discriminated against him on the basis of his age in violation of Oregon law.

Plaintiff's third claim alleges that GEIS fraudulently misrepresented that plaintiff would be allowed to compete for the position as the Regional Manager of the Western District when the position became open.

Plaintiff's fourth claim alleges that Erhlich, acting on GEIS's behalf, defamed plaintiff by publishing and disseminating false information concerning plaintiff's use of a company credit card.

Plaintiff's fifth claim alleges that GEIS failed to timely pay plaintiff wages due and failed to compensate plaintiff for unused vacation time as required under O.R.S. § 652.140.[1]

Plaintiff's sixth claim alleges that plaintiff and GEIS enjoyed a "special relationship" and that "[d]efendants were negligent in exercising its [sic] professional management skills in one or more of the following particulars:

a. In terminating Plaintiff without the exercise of reasonable, professional management skills regarding Plaintiff;

b. In failing to reasonably administer Defendants [sic] own rules and regulations;

c. In terminating Plaintiff's employment for reasons unrelated to Defendant's business operations;

d. In acting unreasonably and failing to follow the terms of Plaintiff's employment contract;

e. In failing to question Plaintiff as to the matters of concern as set forth in the letter of termination prior to his termination;

f. In failing to ascertain why Plaintiff was allegedly deficient in regard to the areas as set forth in his letter of termination;

g. In failing to clearly inform Plaintiff of its' [sic] rules and regulations;

h. In failing to make the necessary investigation to determine whether there was good cause to terminate Plaintiff's employment; [and]

i. In affirming Plaintiff's discharge after Plaintiff had asked for an opportunity to be heard and was denied an opportunity to be heard."

Plaintiff's seventh claim alleges that Erhlich intentionally inflicted severe emotional distress in carrying out plaintiff's termination:

a. By insisting on a face to face confrontation with Plaintiff by acting with no forewarning in a manner designed to cause the most emotional distress and shock to Plaintiff;

b. By acting in a manner to embarrass and upset the Plaintiff in a public place;

c. By terminating him in front of his family;

d. By acting at a time when the Plaintiff would not have any opportunity to respond in a meaningful manner;

e. By doing so Plaintiff would be required to board a plane on vacation when Erhlich had deprived Plaintiff of his economic livelihood and emotional well-being; [and]

f. By threatening a physical confrontation with plaintiff.

---

1. During oral argument concerning the pending motion for summary judgment, counsel for the parties agreed that this claim had been resolved in part, and that a question of appropriate attorney fees remained. Plaintiff's counsel also asserted that questions remain concerning plaintiff's entitlement to certain commission payments. However, I find no allegations that GEIS failed to make required commission payments in the fifth claim.

## STANDARDS FOR EVALUATING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. *Id.* When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. *Id.* at 630–31. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## DISCUSSION

### 1) *Breach of Contract Claim*

### a) *Count One: Termination Without Cause or Proper Procedures*

As noted above, the first count of plaintiff's breach of contract claim alleges that GEIS breached the parties' employment agreement by terminating plaintiff without cause and without following procedures required in the agreement. Plaintiff contends that he could be terminated only for cause according to GEIS's promises, as well as its internal policies and procedures.

In general, an employer in Oregon may discharge an employee at any time, for any reason, unless the termination violates a contractual, statutory, or constitutional requirement. *Patton v. J .C. Penney Co.,* 301 Or. 117, 120, 719 P.2d 854 (1986). Terms included in an employee handbook or manual may constitute terms of an employment contract, *Yartzoff v. Democrat–Herald Publishing Co.,* 281 Or. 651, 576 P.2d 356 (1978), and employers may expressly or impliedly modify the terms of at-will employment agreements after employment begins. *See, e.g., Gilbert v. Tektronix, Inc.,* 112 Or.App. 34, 37, 827 P.2d 919 (1992).

Here, plaintiff has shown the existence of no evidence from which a reasonable trier of fact could conclude that GEIS could terminate him only for cause, or that it was required to follow any particular procedures in carrying out his termination. The application that plaintiff completed unambiguously stated that GEIS could terminate plaintiff "at any time for any reason in the absence of a specific written agreement to the contrary signed by an officer of the company." Plaintiff has shown the existence of no such writing. The Handbook and the Manual that plaintiff was provided also clearly stated that they did not create any employment contract, and noted that oral or written representations by a company employee or agent did not alter the provisions of the plan document. Oregon courts have consistently held that disclaimers stating that policies set out in an employee handbook do not constitute an employment contract are "sufficient to retain an employee's at-will status." *Lawson v. Umatilla County,* 139 F.3d 690, 693 (9th Cir.1998) (*citing Mobley v. Manheim Servs. Corp.,* 133 Or. App. 89, 889 P.2d 1342, 1345 (1995)); *Gilbert,* 827 P.2d at 921. In addition, when his deposition was taken, plaintiff stated that Nina, his original Regional Manager, never told him that he could be terminated

only for cause, and that he never discussed the circumstances under which he could be terminated with any of GEIS's company managers before he was hired.

■ When her deposition was taken, Nina testified that GEIS management policies required that certain procedures be followed, including the formulation of a performance improvement plan, before an employee would be terminated. She also testified that she had followed a policy of counseling and progressive discipline when she had terminated several employees while working for GEIS. In the absence of any writing signed by a manager altering the at-will status upon which he was clearly hired, plaintiff contends that GEIS management guidelines created "an implied in fact employment contract not to terminate him without cause." I disagree. Even if GEIS had or has such formal management policy guidelines,[2] they would not alter plaintiff's at-will status, because policies set out in management manuals do not create binding terms of a contract with an employee. *Lakeside v. Freightliner Corp.,* 612 F.Supp. 10, 13 (D.Or.1984). Here, there is simply no evidence that GEIS intended to alter its employees' at-will status through the promulgation of any management policies.

■ In the face of the disclaimers in the application, Handbook, and Manual noted above, the plaintiff could not have reasonably believed that management policies constituted enforceable terms of an employment agreement. Such disclaimers can retain an employee's at-will status even if the employer's personnel policies set out specific bases for appealing termination. *Lawson,* 139 F.3d at 693 (*citing Gilbert,* 827 P.2d at 920–921). The fact that plaintiff's original manager may have followed certain policies when she terminated employees, or the fact that GEIS managers may have generally followed policies different from those used in plaintiff's termination, could not create a binding

contractual requirement that GEIS employ such practices in plaintiff's termination.

In sum, plaintiff has shown the existence of no evidence from which a reasonable trier of fact could conclude that his employment agreement with GEIS at the time he was hired provided that he could be terminated only for cause, or that his at-will status was subsequently modified to require cause for his termination after he began working for GEIS. Likewise, plaintiff has shown the existence of no evidence from which a trier of fact could conclude that the procedural requirements for termination alleged in the first count of his first claim formed an enforceable part of the parties' agreement.

b) *Count Two: Termination for Taking Vacation*

The parties apparently agree that plaintiff was entitled to three weeks of vacation, and that he was entitled to be compensated for any unused vacation time that he had accrued by the time of his termination. Plaintiff contends that he was terminated for taking vacation, and that this termination therefore breached his contract because he had a right to take vacation under the parties' employment agreement.

■ In analyzing this claim, it is important to emphasize that this is not a tort claim for wrongful termination, in which an ex-employee asserts that he has been terminated in retaliation for pursuing a private statutory right that is directly related to his employment. *See, e.g., Holien v. Sears, Roebuck and Co.,* 298 Or. 76, 90–97, 689 P.2d 1292 (1984). Instead it is a breach of contract claim. A party's motivation for breaching a contract is irrelevant to the question whether the terms of a contract have been breached. *Lund v. Arbonne Int'l, Inc.,* 132 Or.App. 87, 92, 887 P.2d 817 (1994) (*citing Bliss v. Southern Pacific,* 212 Or. 634, 646, 321 P.2d 324 (1958)). Because plaintiff's employment

**2.** GEIS denies the existence of these guidelines, and plaintiff has acknowledged that he has never seen any manager guideline manuals.

was terminable at will, so long as he was paid for any vacation time that had accrued, any relationship between plaintiff's decision to take vacation and his termination is irrelevant to a breach of contract claim.

### c) *Count Three: Termination for Financial Irregularities*

As noted above, "irregularities related to expense accounts" were cited as one of the bases for plaintiff's termination in the letter that plaintiff was provided on March 21, 1997. Plaintiff contends that he was terminated in part because GEIS managers believed that he had committed financial irregularities by submitting an expense report including an $8.95 movie charge incurred in a hotel, and by purchasing a golf glove for himself during a conference in Orlando, Florida.

The third count of plaintiff's first claim alleges that GEIS breached the parties' employment agreement by terminating plaintiff for alleged misuse of his company credit card without complying with procedures set forth in Policy 2–5, which addresses "Irregularities," in the employment manual. That policy provided that each alleged irregularity would be subjected to a "thorough review by management to protect both the interests of the employee and those of the Company." The policy set out certain procedures that management was to follow if it appeared that an "irregularity" may have occurred.

Plaintiff cannot prevail on the third count of his first claim for several reasons. Most significantly, the provisions in question are contained in a manual that clearly states that its terms are not contractual in nature. As noted above, in the face of a specific disclaimer of contractual force, plaintiff cannot establish that Policy 2–5 were binding terms of the parties' agreement, and that any failure to follow the procedures set out in that policy would constitute a breach of the parties' employment agreement. *See Lawson,* 139 F.3d at 693. He has likewise not shown evidence supporting the conclusion that these provisions became binding contractual terms through any other action taken by GEIS managers during the course of his employment. As with the vacation count discussed above, it is important to note that plaintiff was a terminable-at-will employee, and that, so long as the procedures in question did not constitute contractual terms, GEIS's motivation for plaintiff's termination is irrelevant to a breach of contract claim. Though my conclusion that these provisions did not form contractual terms makes further discussion of this claim unnecessary, I also note that plaintiff has not shown evidence from which a reasonable trier of fact could conclude that plaintiff would not have been terminated regardless of the irregularities at issue in the third claim.

### d) *Breach of the Implied Covenant of Good Faith and Fair Dealing*

The count of plaintiff's first claim alleging breach of an implied covenant of good faith and fair dealing states that GEIS's "implied contractual duty of good faith and fair dealing" arose from GEIS's "oral contract with Plaintiff." Plaintiff's memorandum in opposition to the motion for summary judgment asserts that the "oral contract" in question included both an agreement that plaintiff could be terminated only for cause and representations in discussions concerning sales quotas assuring plaintiff that management could be trusted and that GEIS would not "screw" him.

Plaintiff's good faith and fair dealing claim is based upon plaintiff's termination. However, the duty of good faith and fair dealing does not apply to the right to terminate at-will employment contracts. *Sheets v. Knight,* 308 Or. 220, 233, 779 P.2d 1000 (1989). As noted above, plaintiff cannot establish that his employment agreement with GEIS was not terminable at will. He therefore cannot establish a claim based upon an alleged breach of an implied covenant of good faith and fair dealing.

## 2) *Age Discrimination Claim*

Plaintiff concedes that his age discrimination claim is barred by the statute of limitations under the guidance of *Stupek v. Wyle Laboratories Corp.*, 327 Or. 433, 963 P.2d 678 (1998). He contends, however, that *Stupek* "gives rise to questions of constitutional dimension which needs [sic] to be addressed" because persons who are unable to file claims within the statutory period because of a mental condition are accorded "disparate treatment solely by virtue of a disability." Plaintiff asks the court to schedule an evidentiary hearing to provide him the opportunity to establish a record "so that this matter might be contested in the event of an appeal." In the alternative, plaintiff asks the court to certify the question whether he has been deprived of a constitutionally-protected interest to the Oregon Supreme Court.

 Based upon my review of *Stupek*, I am satisfied that an evidentiary hearing is not necessary here, because plaintiff's mental condition is irrelevant following the Court's conclusion that the claim at issue here is not subject to tolling based upon such a condition. I also decline plaintiff's invitation to certify to the Oregon Supreme Court an issue that it did not address when it had the opportunity to do so in *Stupek*.

## 3) *Fraudulent Misrepresentation Claim*

Plaintiff alleges that GEIS induced him to accept its offer of employment by fraudulently misrepresenting that he would be allowed to compete for the position of Regional Manager of the Western District when the position became open, and that he was denied that opportunity when Erhlich was hired for that position. In his memorandum in opposition to the motion for summary judgment, plaintiff contends that, because selection of the Regional Manager "was made at the corporate level with the input of the Area Manager," Nina knew that "that she had no authority to bind GEIS to even consider" plaintiff for that position. Plaintiff has testified that the regional manager and personnel manager also told him that he would be allowed to compete for the regional manager position if and when it became vacant.

 To prevail on his fraud claim, plaintiff must establish that Nina made material false representations; that she knew the representations were false or made the representations recklessly without knowing whether they were true or false; that Nina either intended to mislead him, knew she was misleading him, or recklessly disregarded whether she was misleading him; and that he was damaged by his reasonable reliance upon the representations. *Oksenholt v. Lederle Lab.*, 294 Or. 213, 222–223, 656 P.2d 293 (1982); *Webb v. Clark*, 274 Or. 387, 546 P.2d 1078 (1976). Plaintiff must establish every element of his fraud claim by clear and convincing evidence. *Riley Hill Gen. Contractor, Inc. v. Tandy Corp.*, 303 Or. 390, 392, 737 P.2d 595 (1987). Where the alleged misrepresentation is based upon a promise to perform some future act, a plaintiff must establish that the speaker did not intend to perform the promised act when the statement was made, or that the statement was made with reckless disregard as to whether the act would be performed. *See Donald H. Hartvig, Inc. v. Clackamas Town Ctr. Assoc.*, 101 Or.App. 79, 84, 789 P.2d 679, *rev. denied*, 310 Or. 393, 798 P.2d 672 (1990). In evaluating a motion for summary judgment on a misrepresentation claim, the court must consider the evidentiary standard of proof that would apply at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

 Defendants contend that plaintiff cannot prevail on his misrepresentation claim because he cannot establish that when he was allegedly promised that he would be considered for the position, GEIS did not intend to allow him to compete for the regional manager position when it became vacant. I agree. Plaintiff has shown no clear and convincing evidence that when the representations upon which the fraud claim are based were allegedly

made, GEIS did not intend to allow him to compete for the regional manager position. In addition, at his deposition plaintiff testified that he has no evidence that Nina knew her representations concerning the regional manager position were false when she made them. He also stated that he has no evidence that the other individuals in question made false statements concerning whether he would be allowed to compete for the position. Under these circumstances, plaintiff cannot establish by clear and convincing evidence that the alleged representations were made with knowledge of their falsity, or with reckless disregard as to their truth or falsity.

#### 4) *Defamation*

Plaintiff alleges that Erhlich "published and disseminated false and misleading information" concerning him in the termination letter. He further alleges that GEIS "published and disseminated this false information to the Human Resources Department and to others in the Western Regional District," and published and disseminated this information to other GEIS employees following plaintiff's termination. Plaintiff alleges that GEIS knew that the information in question was false and misleading, and intended to hold him "up to scorn and ridicule."

In his memorandum in opposition to the motion for summary judgment, plaintiff bases his defamation claim on Nina's testimony that, during a trade show meeting, GEIS employees cited the incident involving the golf glove as the reason for plaintiff's termination. He also contends that publication of the false information can be assumed from the fact that by reducing the stated grounds for termination to writing, which was placed in [plain-

tiff's] file, the Defendants could be expected to know that [plaintiff] would be required to disclose the accusations made against him by Defendants in an attempt to seek subsequent employment. Such is the case here when [plaintiff] did in fact seek and secure subsequent employment it was required to disclose the false accusations made against him.[3]

Finally, plaintiff asserts that GEIS "can be found to have disseminated false information into the general business community" based upon his deposition testimony that "he was aware that former clients of his, specifically Freightliner, in addition to other employees of GEIS were aware of the grounds."

 In order to prevail on his defamation claim, plaintiff must establish that GEIS published false and defamatory material concerning him to a third person. *Wallulis v. Dymowski*, 323 Or. 337, 342–43, 918 P.2d 755 (1996). In the alternative, plaintiff appears to set out a claim of "compelled self-publication" in his memorandum that he has not included in his complaint.[4] Assuming that the "it" to which plaintiff refers in the statement from his memorandum cited above is in fact himself and not GEIS, plaintiff asserts that he was required to disclose GEIS's "false accusations" when he applied for other employment. The Oregon Court of Appeals recognized the potential viability of a "compelled self-publication" defamation claim in *Downs v. Waremart, Inc.*, 137 Or.App. 119, 903 P.2d 888 (1995). The *Downs* court held that a claim for such defamation is cognizable in the employment context when "an employer [ ] knowingly or recklessly gives an employee a

---

**3.** It is unclear whether "it" refers to GEIS or plaintiff, and whether plaintiff is asserting that GEIS disclosed the information, or that he disclosed it during his search for employment. Though the final sentence here appears to assert that GEIS made the disclosure, that assertion is inconsistent with the penultimate sentence, which states that plaintiff himself "would be required to disclose the accusations."

**4.** I will address this apparently alternative claim here though plaintiff has not included it in his complaint because, if material issues of fact existed as to plaintiff's ability to establish a "self publication" claim, I would allow plaintiff to amend his complaint to properly assert this claim.

defamatory reason for his or her discharge, when it is reasonably foreseeable that the employee will be under a strong compulsion to disclose that reason to putative employers. . . ." *Id.* at 131, 903 P.2d 888. In order to prevail on a "compelled self-publication" claim, a plaintiff must establish that: (1) the defendant employer made a defamatory statement to the plaintiff employee; (2) it was reasonably foreseeable to the defendant that the plaintiff would be under a strong compulsion to disclose the content of that statement to prospective employers; (3) acting under compulsion, the plaintiff communicated the defamatory statement to a prospective employer; and (4) the plaintiff was damaged because of his communication. *Id.* at 133, 903 P.2d 888. Self-publication claims are subject to a former employer's "qualified privilege to make defamatory comments about the character or conduct of his employees to present or prospective employers." *Id.* at 132, 903 P.2d 888.

■ Assuming for the purposes of this motion that plaintiff can establish that GEIS personnel communicated the statements in question, or that plaintiff himself was compelled to publish them, GEIS is entitled to summary judgment on plaintiff's defamation claim. To the extent that this claim is based upon alleged disclosure to its own employees, GEIS had a qualified privilege to provide information regarding the reasons for plaintiff's termination. A statement is conditionally privileged if it is made to protect the defendant's interests, is made to protect the interests of the plaintiff's employer, or if it concerns a subject of mutual concern to the defendant and those to whom the statement is made. *Wallulis,* 323 Or. at 350, 918 P.2d 755. This qualified immunity may be lost if the publisher does not believe or lacks reasonable grounds for belief in the truth of the alleged defamatory statement; if the defamatory matter is published for a purpose other than that for which the privilege is given; if the publication is made to a person not reasonably believed to be necessary for achieving the purpose of the privilege; or

if the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose of the privilege. *Cooper v. Portland General Elec. Corp.,* 110 Or.App. 581, 589–90, 824 P.2d 1152, 1156–57 (1992). To overcome a privilege, a plaintiff must produce evidence of "some kind of improper motive on defendant's part." *Wattenburg v. United Medical Lab.,* 269 Or. 377, 380, 525 P.2d 113 (1974). Employers generally have a qualified privilege to inform their employees of the reason for a co-employee's termination. *See Vanderselt v. Pope,* 155 Or.App. 334, 345, 963 P.2d 130 (1998); *Bickford v. Tektronix, Inc.,* 116 Or.App. 547, 551, 842 P.2d 432 (1992).

■ Plaintiff here has produced no evidence from which a reasonable trier of fact could conclude that GEIS did not have a qualified privilege to provide its employees the information in question concerning his termination. He has produced no evidence supporting the conclusion that the publisher of that information either did not believe the allegedly defamatory statement, or lacked reasonable grounds for believing that it was true, or that the alleged statements otherwise reflected some kind of improper motive. Plaintiff therefore cannot overcome GEIS's qualified privilege to communicate with its employees.

■ Plaintiff's contention that GEIS is liable for its employees' alleged communications at the trade show must be analyzed in light of GEIS's qualified privilege to communicate with its employees discussed above. Because plaintiff cannot establish that GEIS was not privileged to communicate with its employees concerning plaintiff's termination, GEIS's potential liability for those employees' subsequent communications with others turns on whether those communications were made within the scope of those employees' employment. *See Downs,* 137 Or.App. at 138, 903 P.2d 888 (whether employer responsible for employee's defamatory statement depended on whether employee was acting within scope of employment when statement made). An employee acts with-

in the scope of employment if the act in question occurs within the time and space limits authorized by the employment, whether the employee was motivated, at least in part, to serve the employer, and whether the act was of the kind the employee was hired to perform. *Id.* (quoting *Chesterman v. Barmon*, 305 Or. 439, 442, 753 P.2d 404 (1988)). Here, plaintiff has made no showing that the unidentified GEIS employees who allegedly made the defamatory statements at the trade show were motivated to do so in part by a desire to serve GEIS's interests, or that they were hired or authorized to disseminate such information. Under these circumstances, plaintiff cannot establish GEIS's liability for any defamatory statements that its employees may have made at the trade show.

■ Plaintiff has not shown evidence from which a reasonable trier of fact could find in his favor on the allegations of "compelled self-publication" set out in his memorandum. As noted above, in order to establish this claim, plaintiff must establish, among other things, that it was reasonably foreseeable that he would be under a strong compulsion to disclose the statement to a prospective employer, that plaintiff was damaged because of his communication of that statement, and that, under the circumstances at issue, GEIS itself would not have a qualified privilege to make the statement to a prospective employer. Plaintiff has not shown evidence that would allow him to meet this burden. He has shown no evidence that he was under any compulsion to disclose the statement to a prospective employer because GEIS was likely to do so. In fact, at oral argument on the motion for summary judgment, plaintiff's counsel indicated that GEIS had represented that he was not terminated, but instead had resigned. Plaintiff likewise has made no showing that he has been harmed by any "compelled self-publication." To the contrary, the assertion in plaintiff's memorandum that plaintiff secured employment suggests that plaintiff has not been damaged. Even if plaintiff had shown that he was in fact

compelled to disclose the statement and that he was consequently denied employment, he has not shown evidence from which a trier of fact could conclude that GEIS would not be entitled to the qualified immunity that generally applies to an employer's own disclosures under such circumstances.

Finally, plaintiff cannot prevail on his allegation that "Freightliner" was aware of the defamatory statements. When his deposition was taken, plaintiff testified that he had not verified or substantiated that any Freightliner employee had heard relevant defamatory statements. Plaintiff has not cited any other evidence in the record concerning statements to anyone at Freightliner.

*5) Negligence Claim*

As noted above, plaintiff's negligence claim alleges that plaintiff and GEIS enjoyed a special relationship, and that defendants negligently exercised their management responsibilities toward him in a number of respects. The claim alleges that the parties' "special relationship" existed because of plaintiff's status as an employee and because "defendants contractually agreed with Plaintiff to exercise professional management skills to implement a system of personnel administration based upon merit and uniformity, and equality of treatment to achieve Defendant's objective of making GEIS' employment fair and attractive to employees."

■ Plaintiff cannot prevail on this claim both because his employment did not constitute a "special relationship" with GEIS, and because, as discussed above, GEIS was not contractually obligated to perform the allegedly omitted acts upon which this claim is founded. Employment does not give rise to a "special relationship" imposing any special duty of care on the employer. *Conway v. Pacific Univ.*, 324 Or. 231, 243, 924 P.2d 818 (1996). Negligence claims arise out of contractual relationships only when a party "is subject to a standard of care independent of the terms of the contract." *Georgetown Real-*

*ty, Inc. v. Home Ins. Co.*, 313 Or. 97, 106, 831 P.2d 7 (1992). Under the circumstances at issue here, plaintiff simply cannot assert a viable negligence claim.

6) *Intentional Infliction of Emotional Distress*

To establish a claim for intentional inflictions of severe emotional distress, a plaintiff must show that a defendant intended to inflict severe emotional distress on the plaintiff, that the defendant's acts in fact caused the plaintiff to suffer such distress, and that the underlying acts consisted of "some extraordinary transgression of the bounds of socially tolerable conduct." *Lewis v. Oregon Beauty Supply*, 302 Or. 616, 626, 733 P.2d 430 (1987). A claim for intentional infliction of emotional distress may be established only where the conduct in question is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Rockhill v. Pollard*, 259 Or. 54, 59–60, 485 P.2d 28 (1971) (quoting Restatement (Second) Torts § 46, comment d (1965)).

Plaintiff contends that the timing, location, and proximity of his family to the termination support the conclusion that defendant Erhlich intended to subject him to severe emotional distress. I disagree. Clearly, the timing, location, and proximity of plaintiff's family could render plaintiff's termination more unpleasant. However, a claim of intentional infliction of severe emotional distress requires conduct that goes well beyond Erhlich's conduct here. Without much more, the timing, location, and presence of plaintiff's family nearby fall far short of the truly egregious conduct required to support such a claim. The record before the court would not support the conclusion that Erhlich chose a termination setting that would necessarily impose severe emotional distress, or that Erhlich otherwise conducted himself in a manner that could render him liable on this claim. There is no evidence that Erhlich attempted in any manner to make either plaintiff's family or the public aware that plaintiff's termination was being carried out, that Erhlich threatened plaintiff physically, that he insulted or harassed plaintiff, or that he in any other manner sought to aggravate the anxiety that naturally accompanied a plaintiff's termination. Erhlich and Gonzalez had a right to obtain GEIS's laptop computer that was in plaintiff's possession, and there is no evidence that Erhlich sought to recover this property through force or threat of violence.

In sum, though plaintiff's termination was carried out under circumstances that were less than ideal, the circumstances in question simply do not constitute the kind of "extraordinary transgression of the bounds of socially tolerable conduct" required to establish this claim.

### CONCLUSION

Defendants' motion for partial summary judgment (# 48) is GRANTED.