250 F.3d 1249 (9th Cir. 2001)
 STEWART TITLE GUARANTY CO., A TEXAS CORPORATION, PLAINTIFF-APPELLANT,
v.
THEODORE A. PARK; MORTGAGE LINK, DEFENDANTS-APPELLEES, AND OPINION JOHN R. LIBERATOR, INTERIM REAL ESTATE COMMISSIONER OF THE STATE OF CALIFORNIA, RESPONDENT-APPELLEE.
 No. 99-56366
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Sumitted March 6, 2001
May 18, 2001
 
 1
 [Copyrighted Material Omitted]
 
 
 2
 Jerald E. Gale and Ronald A. Gorrie, Los Angeles, California, for appellant Stewart Title Guaranty Company.
 
 
 3
 Bonnie Holcomb, Deputy Attorney General, Los Angeles, California, for appellee John R. Liberator, Interim Real Estate Commissioner of the State of California.
 
 
 4
 Appeal from the United States District Court for the Central District of California Lourdes G. Baird, District Court Judge, Presiding D.C. No. CV-94-2831-LGB
 
 
 5
 Before: Procter Hug Jr. and Betty B. Fletcher, Circuit Judges, and Susan Y. Illston,* District Judge.
 
 OPINION
 Betty B. Fletcher, Circuit Judge
 
 6
 We decide an issue of first impression: Whether, under California Business and Professions Code §§ 10471(a), a title insurance company that satisfied its obligations to its insured following embezzlement by a mortgage broker is entitled to payment from the State of California Department of Real Estate Recovery Account to recover a portion of an unsatisfied judgment against the embezzling brokers. We hold that it is not.
 
 
 7
 Appellant, Stewart Title, is a title insurance company that insures the condition of real estate title for lenders, property owners, and purchasers involved in real estate transactions. During the relevant period, Stewart Title insured several lenders who loaned money to property owners seeking to refinance existing loans through Mortgage Link, a mortgage broker. The new loans were to be secured by a first lien position. Mortgage Link acted as an escrow holder for the refinanced transactions. As the escrow agent, Mortgage Link was required to pay off existing liens on the refinancer's properties so that the refinanced loans would be secured by first trust deeds. Mortgage Link received the funds for the escrow accounts, but rather than paying off existing liens, embezzled the loan proceeds. Pursuant to its title insurance policies, Stewart Title was obligated to protect its insured against loss of priority to the full extent of loss up to the face amount of the policies. When the senior liens were not paid off by Mortgage Link, the lenders made claims on their insurance policies and Stewart Title payed off the pre-existing liens.
 
 
 8
 Each of Stewart Title's insurance policies also provided that Stewart Title was entitled to be subrogated to all rights of its insured, and pursuant thereto, take any action to reduce loss which may be suffered by its insured. After Stewart Title satisfied its obligations, it became subrogated to the rights of the lenders. As subrogee it filed suit against Mortgage Link and Theodore Park, the designated officer of Mortgage Link.
 
 
 9
 The district court entered a default judgment in the amount of $1,244,047.13 in favor of Stewart Title and against Park and Mortgage Link. $1,217,88.30 of the judgment remains unsatisfied.
 
 
 10
 Stewart Title filed an application with the Department of Real Estate ("DRE") for payment from the Recovery Act Fund. In accordance with longstanding policy, the Real Estate Commissioner denied Stewart Title's application. Thereafter, Stewart Title sought an order from the district court directing payment out of the California Real Estate Recovery Fund pursuant to Cal. Bus. & Prof. Code §§ 10472(a). The district court denied Stewart Title's claim. Stewart Title timely appeals. We review de novo, Lawson v.Umatilla County, 139 F.3d 690, 692 (9th Cir. 1998), and we affirm.
 
 DISCUSSION
 
 11
 The California Real Estate Recovery Account Fund exists to "protect the public against loss resulting from misrepresentation and breach of fiduciary duty by real estate brokers who are unable to respond to damage awards. " Antonio v. Hempel, 71 Cal.App.3d 128, 130 (Cal. Ct. App. 1977). The purpose of the statute is remedial, and, therefore, should be given a liberal construction, Lorenz v. Sauer , 807 F.2d 1509, 1511 (9th Cir. 1987), but "[t]he allowance of any recovery at all from the state is a matter of legislative beneficience." Shirai v. Karpe, 57 Cal.App.3d 276, 279 (Cal. Ct. App. 1976).
 
 
 12
 The account is funded by fees imposed on licensed real estate brokers and salespersons. The maximum amount which may be paid out for the actions of any one licensee is $20,000 per fraudulent transaction and up to a total of $100,000 per licensee. In order to recover from the account, an applicant must meet the requirements set out in Cal. Bus. & Prof. Code section 10471(a):
 
 
 13
 When any aggrieved person obtains . . . a final judgment in a court of competent jurisdiction, . . . against a defendant based upon the defendant's fraud, misrepresentation, or deceit, made with intent to defraud or conversion of trust funds arising directly out of any transaction not in violation of Section 10137 or 10138 in which the defendant, while licensed under this part, performed acts for which that license was required, the aggrieved person may, upon the judgment becoming final, file an application with the Department of Real Estate for payment from the Recovery Account, within the limitations specified in Section 10474, of the amount unpaid on the judgment that represents an actual and direct loss to the claimant in the transaction.
 
 
 14
 (emphasis added). Furthermore, §§ 10471(c)(7)(E) requires that an applicant certify that she "has diligently pursued collection efforts against . . . all other persons liable to the claimant in the transaction that is the basis for the underlying judgment."
 
 
 15
 We must decide whether a title insurance company is an aggrieved person within the meaning of the statute. Even if not an "aggrieved person," we must decide if Stewart Title may resort to its status as subrogee of "aggrieved persons" in order to recover.
 
 I. Aggrieved Person
 
 16
 Although neither our circuit, nor the California courts, have dealt directly with the question of whether a title insurance company can qualify as an aggrieved person under the recovery statute, a relevant core principle has emerged from the pre-existing cases discussing this statute. In construing the term "aggrieved person," we have always looked to the general purpose of the act of which the statute is a part. Lorenz v. Sauer, 807 F.2d 1509 (9th Cir. 1987); Middlesteadt v. Karpe, 52 Cal.App.3d 297, 302 (Cal. Ct. App. 1975). The primary purpose of the real estate act is to protect the public by improving standards in the real estate profession by requiring fair and ethical behavior by licensees who are unable to respond to damage awards. Lorenz, 807 F.3d at 1512.
 
 
 17
 The leading California case construing the term "aggrieved person" is Middlesteadt. 52 Cal.App.3d 297. The case involved a licensed real estate agent who had been defrauded by another licensed real estate agent and sought to recover from the fund. Denying recovery, the court held that because the case involved an internal business dispute not involving any fraud or deceit perpetrated on clients, recovery by the broker would not further the consumer protection purpose of the statute. Middelsteadt also reasons that real estate licensees do not need the protection provided by the fund since they themselves are in a better position than the general public to guard against the deceitful and fraudulent acts of their colleagues. The California court states: "[i]n light of the state policy underlying the real estate act, the broad provision of section 10471 must be read to the effect that the aggrieved person who is entitled to compensation from the Recovery Fund must be a client or a member of the general public." Id. at 302.
 
 
 18
 Here, Stewart Title was not a"client" of the defrauding broker, Mortgage Link. Rather, Stewart Title is a title insurance company in the business of insuring, guaranteeing or indemnifying owners of and lenders secured by real property. Furthermore, Stewart Title is not a vulnerable member of the public unable to protect itself from the deceitful conduct of real estate licensees. As an insurance company, Stewart Title charges a premium in exchange for assuming the title risk involved in this dispute. Unlike a "client or member of the general public" Stewart Title has the ability to absorb, spread and minimize the risk of damage that results from faulty titles. Thus, under the plain meaning of "aggrieved person" as discussed in previous case law, Stewart Title does not have a direct right of recovery from the fund.
 
 II. Subrogation
 
 19
 As an alternative to its theory that it has a direct right of recovery as an aggrieved person under the statute, Stewart Title argues that it is entitled to payment out of the fund as a subrogee of other aggrieved persons; namely the lenders and borrowers. It is true, as Stewart Title urges, that our case law permits assignees of an aggrieved party, under some circumstances, to collect from the recovery fund. In Lorenz we stated:
 
 
 20
 The Commissioner maintains that since Lorenz is not a client or a victimized member of the public, he is not entitled to apply for recovery from the fund. We find that position too broad since it would preclude any assignee or representative of a member of the public who was directly defrauded by a licensee from applying for recovery from the fund. The Middleseadt case does not suggest such a sweeping restriction.
 
 
 21
 807 F.2d at 1513. Nevertheless, in Lorenz itself we limited those who may recover.
 
 
 22
 Lorenz involved a corporation, CEI, which sold fractionalized real estate notes and trust deeds using a ponzi scheme. After CEI filed for bankruptcy, its trustee (Lorenz) prepared a reorganization plan which called for the assignment by trust deed holders of all their rights to the trust deed in exchange for a note backed by a deed of trust. Based on these assignments, Lorenz sued a CEI salesman for negligent misrepresentation, the conduct which caused the loss. Lorenz won a judgment against the salesmen, but was unable to recover. Lorenz then applied for payment from the recovery fund.
 
 
 23
 Although we stated in Lorenz that an assignee or representative of a member of the public who was directly defrauded by a licensee would not, as a general matter, be precluded from seeking recovery from the fund, we held that Lorenz could not recover. We reasoned "that under the plan the compensation received from the Recovery Fund will not likely be fully realized by the defrauded investors . . . The fund was designed to aid the victimized client who, having relied on the broker's or salesperson's licensure by the state of California finds himself not only defrauded but also unable to recoup his investment." Id. at 1513.
 
 
 24
 On first blush, the limiting principle from Lorenz seems applicable to the instant case. Since the borrowers and insured lenders have been made whole through payment under the title insurance policy, the funds from the Recovery fund would go entirely to Stewart Title and not the victimized client. However, the facts in Lorenz are distinguishable. At least part of our stated reluctance to allow the trustee to recover from the fund in Lorenz was our disapproval of the fact that the money recovered from the fund would be used to benefit the estate of CEI--the actual wrongdoer. The same is not true in this case, where Stewart Title played no role in the deceptive conduct.
 
 
 25
 Nevertheless, following Lorenz, a California court decided Wallace v. Onate, 2 Cal.App.4th 549, 555 (Cal. Ct. App. 1991). It is directly relevant. Wallace focuses on §§ 10471(c)(7)(E) of the Business and Professions Code that states that a claimant must "diligently pursue collection efforts against other judgment debtors and all other persons liable to the claimant in the transaction that is the basis for the underlying judgment." (emphasis added).
 
 
 26
 In Wallace, a real estate agent (Onate) negligently delivered her clients' checks to another agent (Smith). Smith fraudulently converted the checks for his own use. Fearful that she might be sued, Onate recompensed her clients in full for their losses, obtained assignments from them, filed an action in the municipal court against Smith and obtained a default judgment. With that judgment unsatisfied, Onate applied to the Commissioner for payment from the recovery fund. She relied on a subrogation theory and claimed that she succeeded to the claims of her clients when she reimbursed them for their losses.
 
 
 27
 The California court held that Onate could not recover for two reasons. First, as in Lorenz, the court believed that it was not in keeping with the purpose of the fund to allow a negligent actor to gain from the fund, even though the wrongdoer had compensated the injured party and had been assigned their rights.
 
 
 28
 However, Wallace offers an additional reason as to why Onate could not recover that is directly on point. Citing §§ 10471(c)(7)(E), the California court said:
 
 
 29
 Onate cannot proceed against the Recovery Account for the additional reason that both she and Smith were liable to her clients. An application for payment from the Recovery account requires, inter alia, a statement by the claimant "[t]hat he or she has diligently pursued collection efforts against other judgment debtors and all other persons liable to the claimant in the transaction that is the basis for the underlying judgment." §§ 10471(c)(7)(E). Thus, Onate's clients were required to pursue their claims against Onate and Smith, in addition to the Recovery Account, which serves as a fund of last resort to protect the consumer, not the persons liable to the consumer. Accordingly, Onate cannot resort to her status as a subrogee or assignee to be made whole by the Recovery Account.
 
 
 30
 Id. at 554-55 (emphasis added). As this"last resort" analysis indicates, aggrieved persons have no right to recovery from the fund until they have exhausted all other avenues of relief. Under the contractual liability created by the title insurance contract involved here, Stewart Title was obligated to compensate the lenders for their loss of lien priority. Thus, in light of the §§ 10471(c)(7)(E) provision, the insured would not have been eligible for recovery from the fund prior to seeking compensation from the title insurance company. However, once they did seek that compensation, both they and the borrowers were made whole by Stewart Title. Viewed in this light, because title insurance was purchased to cover the relevant transactions, the borrowers and insured lenders are not themselves eligible for relief. Thus, there can be no subrogation right for Stewart Title.
 
 CONCLUSION
 
 31
 The California Real Estate Recovery Fund is a limited fund of last resort created by the California legislature to protect members of the public who would otherwise have no recourse against unscrupulous real estate professionals. Title insurance companies were not intended by the California legislature to be "aggrieved parties" as that term is used in Business and Professions Code §§ 10471(a). Furthermore, we reject Stewart Title's claim based on a theory of subrogation. Stewart Title was contractually liable to compensate the lenders for their loss and thus the lenders were precluded from recovery until they pursued collection from "all other persons liable." Upon recovery from Stewart Title, the insured lenders and borrowers were made whole and there is no right of recovery to which Stewart Title could be subrogated. We therefore affirm.
 
 
 32
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable Susan Y. Illston, United States District Judge for the Northern District of California, sitting by designation.